518 A.2d 1197

COMMONWEALTH of Pennsylvania, Appellant,

v.

Gary Leo MONTGOMERY and Samuel Tribuiani, Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 24, 1986.

Decided Dec. 16, 1986.

Mary M. Killinger, Chief, Appeals Div., Fort Washington, for appellant.

Gilbert J. Scutti, Philadelphia, for Gary Leo Montgomery.

Maurino J. Rossanese, Norristown, for Samuel Tribuiani.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue presented for our consideration in this case is whether the Intra-State Hot Pursuit statute, 42 Pa.C.S.A. § 8901, as it existed prior to its repeal in 1982, authorized an extraterritorial arrest for which probable cause arose after the pursuing officer had crossed the territorial limit of his political subdivision.

█ Several wealthy neighborhoods in Abington Township, Montgomery County, had been subjected to more than a score of burglaries, netting the perpetrators large amounts of jewelry, silver, furs, artwork, cash and curios, when township police set up a special surveillance team in February of 1982. A gray cadillac bearing New Jersey license plate 879–SDX was spotted at 7:00 p.m. on February 20 in a section of darkened residences. One police officer positioned himself in an unmarked vehicle to keep the cadillac in sight, for it had been observed the night before operated by two white males, driving slowly back and forth through the high risk neighborhoods. The vehicle had also been observed parked near the scene of a prior attempted burglary. The officer in the unmarked vehicle saw an individual dressed in dark clothing getting into the cadillac and driving away. These facts are sufficient for a "Terry."

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

A decision was made to follow the cadillac to conduct an investigatory stop. The officer in pursuit knew his vehicle could easily be outpaced by the cadillac, so he did not attempt to stop it until backup was available, at which time he had driven two tenths of a mile beyond the territorial limit of his own political subdivision.

After the cadillac was stopped, officers observed a pry bar and flashlight on the floor of the vehicle and what appeared to be pages of a telephone directory on a clipboard between the driver and passenger, both of whom were white males attired in dark clothing and soft-soled shoes. The driver could not adequately account for their presence in the area and did not give the correct date of birth appearing on "his" driver's license. As he was placed under arrest for possession of instruments of a crime, the passenger was observed pushing something down under the seat. The passenger, who also could not recite the correct birthdate on "his" driver's license, was asked to get out of the car, and when he exited the vehicle, police officers saw the butt of a revolver protruding from under the car seat. The passenger was placed under arrest.

The driver, appellee Samuel Tribuiani, and the passenger, appellee Gary Leo Montgomery, were arraigned on charges of loitering and prowling, possession of prohibited offensive weapons, and possession of instruments of a crime. They were unable at that time to post bail. The cadillac was registered in the name of appellee Tribuiani's girlfriend who resided in New Jersey. She consented to a search of her apartment, and township police recovered a substantial quantity of goods linked to the Abington Township burglaries. On February 22, 1982, when the items were displayed at the township police station, appellees requested that they be allowed to confer in private. Following their conference and adequate Miranda warnings, appellees confessed to over 30 burglaries. Appellees later rode with police through the township identifying homes they could remem-

ber having burglarized and confirming victims' inventory lists..

A suppression hearing was held in the Court of Common Pleas of Montgomery County on November 16–17, 1982. The suppression court ruled that, although the police officers were acting in "consummate good faith," the arrest was illegal in that it violated 42 Pa.C.S.A. § 8901, which at the time provided:

**Intra-State Hot Pursuit**

Any police officer of any political subdivision may arrest with or without a warrant any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision if the officer continues in pursuit of such person after commission of the offense. The police officer shall exercise under this section only the power of arrest which he would have if he were acting within the territorial limits of his political subdivision.[1]

The suppression court also determined that the taint of the arrest had not been attenuated by events occurring subsequent to the arrest. Thus, the court suppressed the statements made by appellees concerning the Abington Township burglaries, thereby effectively precluding prosecution therefor. Properly treating the issue of illegal arrest as one of first impression, Superior Court (per McEwen, J., Tamilia, J., and Hoffman, JJ.) affirmed. *Commonwealth v. Montgomery*, 341 Pa.Super. 573, 492 A.2d 14 (1985).

We granted the Commonwealth's Petition for Allowance of Appeal to consider (1) whether the arrest was illegal, and (2) if so, whether the exclusionary rule requires the suppression of evidence obtained from an arrest made contrary to legislative rule, but within constitutional parameters. In *Commonwealth v. Mason*, 507 Pa. 396, 406 n. 2, 490 A.2d 421, 426 n. 2 (1985), we expressly reserved the question of "whether the Pennsylvania Constitution itself, Article I, Section 8, would compel the exclusion of evidence obtained in violation thereof, [or] whether a state constitutional

---

1. Section 8901 was repealed on August 15, 1982 and replaced by 42 Pa.C.S.A. § 8953(a)(2).

exclusionary rule would be applied in a manner co-extensive with its federal counterpart." This case appeared at first blush to give us the opportunity to address these important exclusionary rule issues.

A careful review of the record, however, reveals that the Commonwealth did not properly preserve the exclusionary rule issue, therefore we are constrained from considering it herein.[2] We have stated elsewhere that "[t]he failure to preserve an issue on appeal will be excused only when a strong public interest outweighs the need to protect the judicial system from improperly preserved issues. (*See, Commonwealth v. McKenna,* 476 Pa. 428, 383 A.2d 174 (1978)—appeal permitted to insure that capital punishment comports with the United States Constitution)." *Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 224, 489 A.2d 1291, 1301 (1985). We do not find a sufficiently strong public interest with regard to the exclusionary rule issue, therefore we confine our discussion to whether the arrest was illegal under the Intra-State Hot Pursuit statute.

The suppression court reasoned that the arrests were illegal in that:

the police must have probable cause sufficient to affect [sic] a legal arrest before they may pursue and subsequently detain defendants out of their jurisdiction.... There is no statutory authority providing for extra-territorial detention.

Suppression Court Opinion, Jan. 21, 1983 at 6.

Superior Court agreed, stating:

**2.** The Commonwealth filed the following Concise Statement of Matters Complained of on Appeal:

1. The lower court erred in finding that the defendants [sic] arrest was illegal.

2. Even if the court correctly concluded that the defendants [sic] arrest was illegal, nevertheless his [sic] confessions to the crimes should not have been suppressed as the connection between the arrest and the statement have [sic] become so attenuated as to dissipate any taint with respect to the statements given by the defendant [sic].

These were the only issues raised by the Commonwealth before the suppression court and Superior Court.

We believe that the legislative intent was to authorize police pursuit of suspects into another jurisdiction for the purpose of *arresting* them. Therefore, the police must have probable cause sufficient to effect a legal arrest before they pursue. There is no statutory authority providing for extra-territorial *detention* for investigative purposes.

*Commonwealth v. Montgomery*, 341 Pa.Super. at 580, 492 A.2d at 18 (emphasis in original).

■ The Intra-State Hot Pursuit statute does not require that probable cause for an arrest exist *before* a pursuing officer crosses the boundary of his political subdivision. By its terms, the statute confers extraterritorial authority to make an arrest when (1) an offense has been committed within the officer's political subdivision; (2) pursuit continues following commission of the offense; and (3) the officer exercises only that power of arrest which he would have if he were acting in his own jurisdiction. We do not believe that the legislature intended to make the knowledge possessed by the officer at the time the territorial boundary is crossed to be determinative of the validity of an arrest made pursuant to this statute. Often, pursuit of a criminal suspect has its inception in an officer's reasonable belief that criminal activity has occurred or is about to occur. As "the chase" ensues, pertinent information is radioed to the officer or the officer makes certain observations with respect to the suspect which then give rise to probable cause for purposes of effectuating a valid arrest. The point at which probable cause arises is immaterial under this statute.

The court in *Hutchinson v. State*, 38 Md.App. 160, 380 A.2d 232 (1977), construing a Uniform Act on Fresh Pursuit, similar in many respects to 42 Pa.C.S.A. § 8901,[3] held

---

**3.** The relevant statute reads as follows:

§ 23–901 *Arrest in the District of Columbia by Officers of other States*

Any member of a duly organized peace unit of any State (or county or municipality thereof) of the United States who enters the District of Columbia in fresh pursuit and continues within the District of

that a Maryland police officer who saw two men casting glances over their shoulders as they raced away from a hotel in a high crime area and who followed them into the District of Columbia, was authorized to make an arrest in the District of Columbia, even though he learned from a radio broadcast, *after* he left Maryland, that a crime had been committed in that State. The *Hutchinson* court held that:

> the statute was intended to permit any member of an organized peace unit of any State to *enter* in fresh pursuit within the District, and *to arrest the person pursued, whom he has probable cause to believe, at the time of arrest, committed a felony in the place of the officer's jurisdiction.*

380 A.2d at 238 (emphasis in original).

The Maryland court cited *Commonwealth v. Robb*, 238 Pa.Super. 62, 352 A.2d 515 (1975), and *U.S. v. Getz*, 381 F.Supp. 43 (E.D.Pa.1974), *aff'd without opinion*, 510 F.2d 971 (3d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1684, 44 L.Ed.2d 105 (1975), as related authority to support its holding. Such reliance is not misplaced.

In *Commonwealth v. Robb*, Superior Court correctly upheld the validity of an arrest for driving under the influence which arrest occurred beyond the arresting officer's political subdivision, finding that the officer could have arrested the defendant for another offense which occurred within the officer's political subdivision. Probable cause for the "drunk driving" arrest only arose when the stop was made in the foreign political subdivision and the officer observed the defendant's condition.

> Columbia in fresh pursuit of a person in order to arrest him on the ground that he is believed to have committed a felony in such State shall have the same authority to arrest and hold that person in custody as has any member of any duly organized peace unit of the District of Columbia to arrest and hold in custody a person on the ground that he is believed to have committed a felony in the District of Columbia. This section shall not be construed to make unlawful any arrest in the District of Columbia which would otherwise be lawful.

146

In *U.S. v. Getz,* police officers located a vehicle parked in a lot beyond the territorial limit of their political subdivision which vehicle matched the description of a getaway vehicle. The officers entered the establishment adjacent to the lot and saw two men matching the description of the criminal suspects with a shopping bag nearby containing masks and wigs in plain view. Implicit in the court's decision was its recognition of the fact that probable cause for the arrest arose at the time of the arrest and not before the officers left their political subdivision.

The officers in the instant case would have been fully authorized to conduct an investigatory stop in their own political subdivision. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). They spotted a car for which they were specifically on the alert in a high crime area. Its location among darkened residences and the attire of the individual observed entering the vehicle would have led a reasonably prudent person to suspect that criminal activity was afoot. The vehicle was pursued into the next political subdivision and the officers' suspicions ripened into probable cause when they questioned appellees and observed the pry bar, flashlight, directory, and revolver in the automobile. At the time of the arrest, the officers had probable cause to believe that appellees had engaged in criminal activity in the officers' political subdivision. The requisites of the Intra-State Hot Pursuit statute were met, therefore the arrest was valid and the suppression court erred in suppressing the statements made by appellees following the arrest.

We hereby reverse the order of the Superior Court and remand for further proceedings consistent with this opinion.

McDERMOTT, J., filed a concurring opinion.

ZAPPALA, J., filed a dissenting opinion.

McDERMOTT, Justice, concurring.

I join in the opinion of the Majority; however, I reiterate

that under Section 8901 of the Intra-State Hot Pursuit Act [1] a *Terry* [2] analysis is all that is required. *See Common-wealth v. Magwood,* 503 Pa. 169, 177, 469 A.2d 115, 119 (1983) (Concurring Opinion, McDermott, J.)

ZAPPALA, Justice, dissenting.

Again I must dissent from the majority's result-oriented approach to the interpretation of a very important statute of this Commonwealth, namely, the Intra-State Hot Pursuit Act, 42 Pa.C.S.A. § 8901 (repealed August 15, 1982). In effect, what the majority attempts to do, as Mr. Justice McDermott more candidly sets forth in his Concurring Opinion, is to broaden this statute to allow for an extra-ter-ritorial *Terry* stop, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This is neither contemplated by the statute nor logical.

The purpose of a *Terry* stop is to detain a person on less than probable cause where the officer has some specific, articulable reason to suspect that criminal activity is afoot, and frisk him if similarly identifiable reasons give rise to a suspicion of danger to himself. It is the danger to the officer combined with the possibility of criminal activity which allow the probable cause standard to be relaxed. In the instant case there was no danger to the police officers who were following the automobile, since the occupants were merely seen for a second time in an area where previous burglaries had been committed. No evidence of *present* crime had been obtained. The police were acting solely in an investigatory capacity in an attempt to solve *prior* crimes. Investigation, in and of itself, contemplates slow, methodical actions over time and not the immediacy and freshness underlying the purpose of the Act. It is therefore clear to me that the Act was not intended to empower a police officer to act outside his jurisdiction on less than probable cause.

1. 42 Pa.C.S. § 8901 (repealed).
2. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

As the majority points out, the statute requires that (1) an offense has been committed within the officer's political subdivision; and (2) pursuit continues following commission of the offense, (At 144). The operative word here is *continues.* Where, as here, police officers are merely investigating a series of crimes and conducting a stakeout of the general area, looking for suspicious activity but not possessing any specific description of a suspect person or vehicle, it cannot be said that those officers are pursuing or continuing to pursue the perpetrator of even these *prior* crimes, since they have no indication of who those perpetrators are.

The fact that the Appellees here were stopped only two tenths of a mile outside the arresting officers' jurisdiction makes the proper application of the Act appear to work an unfairness on the police. Regrettably, however, the legislature either overlooked or did not deem it appropriate to extend the extra-territorial authority of the Act to police officers merely *investigating* the commission of a crime.

Indeed, to find support for the legislature's intention to apply no less than a probable cause standard to extra-territorial police jurisdiction, one need only look to the replacement for § 8901, 42 Pa.C.S. § 8953 which provides in relevant part:

Section 8953.  Statewide municipal police jurisdiction. (a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

. . . . .

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or *which he has probable cause to believe* was committed, within his primary jurisdiction and for which offense *the officer continues*

*in fresh pursuit* of that person after the commission of the offense. (Emphasis added).

It is clear from the facts of the instant case that the police officers did not possess the probable cause necessary to effectuate an arrest of the Appellees and the Superior Court so held. It is not for this Court to judicially graft that power onto the statute in order to ratify the actions of the police in what otherwise appears to be a valid conviction.

At best, under the instant facts, the officers possessed only an articulable suspicion which might justify a *Terry* stop. For the reasons I stated in my dissent in *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985) (Zappala, J. dissenting), however, I question whether the police even had that justification since the record is devoid of any evidence that the police knew that "specific conduct of the seized person, observed by them, justified and made reasonable their belief that criminal activity was afoot and that the seized person was armed and dangerous." *Cortez*, 507 Pa. at 540, 491 A.2d at 116, *citing Commonwealth v. Hicks*, 434 Pa. 153, 160, 253 A.2d 276, 280 (1969). I therefore dissent and would affirm the order of the Superior Court.