560 A.2d 795

COMMONWEALTH of Pennsylvania

v.

Ralston W. MERCHANT, Jr., Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 6, 1989.

Filed June 12, 1989.

James A. Ashton, Pittsburgh, for appellant.

Scott A. Bradley, Assistant District Attorney, Washington, for Com., appellee.

Before BROSKY, MELINSON and WATKINS, JJ.

BROSKY, Judge:

This is an appeal from judgment of sentence imposed upon appellant after his conviction for driving under the influence.

Appellant was arrested in Aspinwall Borough by a police officer of a neighboring municipality, Etna, who drove through Aspinwall on a "routine patrol." Appellant raises one issue for our resolution: whether the trial court erred in not granting appellant's motion to suppress due to the stop and arrest being in violation of 42 Pa.C.S.A. § 8953. Upon consideration of all arguments, we vacate the judgment of sentence, grant appellant's motion for suppression and remand for a new trial.

On October 21, 1988, appellant was operating a motor vehicle in the Borough of Aspinwall when he was stopped by a police officer of the Borough of Etna. The Etna officer was neither in pursuit of a suspect nor responding to a request for aid but, instead, apparently, was on a "routine

patrol" of the neighboring borough. Apparently this is a frequent occurrence as the officer testified, "[w]e routinely go through Aspinwall and Sharpsburg." After field sobriety tests were taken, appellant was arrested for driving under the influence and later administered Blood Alcohol Content (BAC) tests. He was later convicted in a bench trial.

We do not have great difficulty in deciding that the arrest in the present case was in violation of the Municipal Police Jurisdiction Act. Curiously, the Commonwealth does not even assert that the arrest was allowed under the Act. In contrast, the trial court asserts that the detention by the police was authorized under subsection (a)(5) of the Act. The portions of the Act relevant to our discussion read as follows:

(a) Section 8953. General Rule. Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

. . . . .

(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction *for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.*

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the

> peace or other act which presents an immediate, clear
> and present danger to persons or property.

(Emphasis added). The trial court evidently believes that any time an officer, while on duty in his or her own jurisdiction, enters another jurisdiction he would be "on official business." However, we cannot agree that an on-duty officer in a jurisdiction foreign to his own automatically obtains this status. Rather, when subsections (4) and (5) are read simultaneously, the import of those terms, we believe, becomes much clearer.

The general purpose of the statute is to restrict the jurisdiction of police to their own municipalities, on the one hand, while allowing certain practical and policy exceptions to the general rule on the other hand. In subsection (4), the ability of police to perform functions in another jurisdiction related to or incident to matters developing in their primary jurisdiction is recognized. *Commonwealth v. Sestina,* 376 Pa.Super. 441, 546 A.2d 109 (1988), provides an example of the conduct contemplated in subsection (4). In *Sestina,* officers investigating a motor vehicle accident scene where the driver left the scene without notifying police or identifying himself, were led, by information provided by witnesses, to the driver's apartment situated in another borough. This conduct was classified by a panel of this court to fall within subsection (4).

When the material in subsection (5), placed logically, we must assume, after subsection (4) is read, it appears that subsection (5) allows police officers, who are in the foreign jurisdiction on "official business" under the guise of subsection (4), and who witness the commission of a crime or offense, to perform the same functions in the foreign jurisdiction that they can perform in their own jurisdiction in similar circumstances: namely, detain the offender. If subsection (5) is read to consider "official business" as any visit by an on-duty officer into another jurisdiction the exception would swallow the rule and, further, would make many of the specified subsections superfluous. There would be, in effect, virtually no limitation on the jurisdiction

of the municipal police at all and, of course, this would run contrary to the purpose of the statute. As stated by our colleague, Judge Watkins, in *Commonwealth v. Ebersole*, 342 Pa.Super. 151, 492 A.2d 436, 438 (1985):

A careful reading of the subject statute reveals that its purpose is to provide police officers with authority to make arrests outside of their primary jurisdictions *in limited situations*. In providing for such authority, the statute also insures that police departments will be kept apprised, to the greatest possible extent, of action taken in the municipality by police from outside the jurisdiction.

(Emphasis added). Certainly, this purpose would be frustrated if police could, perhaps on quiet or uneventful days or evenings, enter neighboring jurisdictions in hope of making an arrest. Thus, we have little difficulty in determining that the stop and arrest in the present case was in violation of the statute and thus unlawful. Thus remains the question of the remedy to be applied.

In the instant case appellant seeks suppression of all evidence obtained subsequent to the unlawful detention, no other remedy is urged. There is authority indicating that suppression is an appropriate remedy for violation of the Municipal Police Jurisdiction Act. *Commonwealth v. Fiume*, 292 Pa.Super. 54, 436 A.2d 1001 (1981); *Commonwealth v. Fischer*, 348 Pa.Super. 418, 502 A.2d 613 (1985); *Commonwealth v. Roberts*, 356 Pa.Super. 309, 514 A.2d 626 (1986).

However, there is also some authority suggesting that suppression is an inappropriate remedy for a violation of the Act. *Commonwealth v. Saul*, 346 Pa.Super. 155, 499 A.2d 358 (1985); *Commonwealth v. Peppers*, 357 Pa.Super. 270, 515 A.2d 971 (1986); *Commonwealth v. Sestina, Supra*. Apparently relying upon this authority, the Commonwealth has, bypassed argument on the legality of the Etna police officer's activity in entering and patrolling Aspinwall and stated that even if it was violative of the Act, suppression would be an inappropriate remedy. In our view a willful disregard of legislative jurisdictional restrictions on

police powers can neither be condoned nor encouraged explicitly or implicitly by this court. Nothing breeds contempt for the law more so than when those entrusted to enforce it readily violate it. This is true even if the law disregarded does not relate to a "fundamental" right. We acknowledge the authority indicating that suppression is sometimes an inappropriate remedy for a violation of the Act. However, this authority cannot be properly read to suggest that all violations of the Act will be free from the remedy of suppression.

In actuality, of the cases cited by the Commonwealth to support their position, only one of those cases makes a holding that suppression was inappropriate for the violation committed, *Commonwealth v. Saul,* supra. In both *Peppers* and *Sestina,* the panel found that the Act *was not* violated and, as an aside, also stated that had the conduct engaged in there been found to be a violation, suppression would be inappropriate. In *Peppers,* the panel prefaced the statement regarding suppression with the words "under these circumstances", and, even *Saul* prefaced its conclusion regarding suppression with the statement "[u]nder the circumstances of the instant case." Thus, clearly, these cases do not have the all-conclusive and encompassing nature implicitly represented to us by the Commonwealth.

The decision in *Saul* was, essentially, an application of the *Mason* decision of our Supreme Court to a situation involving a violation of the Municipal Police Jurisdiction Act. In *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985), our Supreme Court indicated that suppression was an inappropriate remedy for a violation of the Rules of Criminal Procedure relating to issuance and execution of search warrants when the violation was more technical than substantive.

In *Mason,* a police officer from Montgomery County had reason to believe that a resident of Reading, Berks County, had committed a burglary in Montgomery County. A search warrant was issued and the Montgomery police, accompanied by two officers from Reading, searched the

suspect's apartment. A panel of this Court found a violation of the rules, and granted suppression, essentially, because the Reading police did not "participate" in the search. Our Supreme Court indicated, while holding that the search was not in violation of the rule, that suppression would be an inappropriate remedy under such circumstances.

■ The panel in *Saul* believed the same result should follow under the facts of that case. There, an officer from Harrisburg engaged in a controlled drug buy at the appellant's apartment located in Susquehanna Township without either permission or a request for aid from Susquehanna Township Police. The panel, concluding that the violation was similar to the one in *Mason*, found that suppression was inappropriate. Although not engaging in a thorough discussion on the nature of the violation, the panel implicitly concluded that the violation was not substantive, or at least, not substantive enough to require suppression of evidence. We believe it is important to note that the conduct of the police in *Saul* was not, by itself, of a type wholly unauthorized by the statute. By this we mean that we don't believe that extra jurisdictional investigations are always in violation of the Act. Certainly police, under the Act, can conduct investigations outside their primary jurisdiction if they follow proper procedures. Thus, the violation itself was a result of a failure to proceed properly in the extra-territorial investigation. It was not a result of the fact that extra-territorial investigations were unauthorized under the Act. Similar comments would apply to the decisions in both *Peppers* and *Sestina*.

In *Commonwealth v. Peppers*, supra, we were faced with a situation where a description of a car involved in a robbery was relayed over the radio. An officer of a nearby jurisdiction saw what he believed was the suspect vehicle, and began pursuing that vehicle while notifying the police in the borough where the robbery took place. When another police vehicle approached, the suspect vehicle was stopped and the appellant was ultimately apprehended and arrested. The arrest took place in a third jurisdiction,

Harrisburg. The panel found the arrest to be in conformity with the Act, yet indicated under those circumstances suppression would be appropriate. Of course, arrests in other jurisdictions are recognized under the Act when police follow in fresh pursuit or respond to a request for aid. As such, the police conduct in *Peppers* was of a type contemplated in the Act. Similarly, in *Commonwealth v. Sestina,* supra, as already related, police, while investigating an accident, were provided information regarding a suspect who lived in a nearby township. The only question in that case regarded whether or not the police had proper consent to enter the other township in following up the accident. The panel found that they did. There is no question that the Act contemplates and allows police to enter another jurisdiction to investigate matters originating in their own jurisdiction and also to arrest an individual for a crime committed in their jurisdiction. The only question in *Sestina* regarded whether the police had proceeded properly in doing so.

In all three of these cases, the actions taken by the police revolved around, or were in response to, specific criminal behavior. This is where the present case diverges from the others in a fashion which we believe to be substantial. In the present case, the intrusion by the police into the neighboring jurisdiction was not in response to any specific criminal action or behavior. Nor can the intrusion into the jurisdiction under those circumstances, be said to have been contemplated under the Act.

 The Act clearly does not contemplate or condone extra-territorial patrols.[1] In fact, the entire purpose of the

1. Much was made of the fact, during suppression proceedings, that the municipalities in question were part of a large group of municipalities party to a mutual aid and assistance agreement. We find the agreement to be immaterial to our decision for two reasons. First, the agreement itself cannot be read to allow the activity in question. The agreement contemplates the provision of assistance upon request and also speaks of responding to a request for aid. The agreement does not appear to authorize blanket approval of routine patrols by police from a neighboring jurisdiction. Secondly, nothing in the Act itself would appear to authorize the expansion of the jurisdictional parame-

Act is to provide a general limitation on such activity while allowing exceptions, for, in essence, extra-territorial activity in response to specifically identified criminal behavior, that occurring within the primary jurisdiction of the police. We cannot conclude that, in the present case, the police in question were engaging in activity of a type allowed or contemplated in the Act, yet perhaps failed to proceed in total conformity with Act. Nor can we, in good conscience, say that there was only a "technical" violation of the Act. The conduct in the present case, although not necessarily abusive or pernicious, was in direct conflict with the general purpose and/or spirit of the Act. Hence, it was quite clearly a substantive violation of the Act.

The fact that the violation here is substantive militates toward a finding that suppression is appropriate. This position is further strengthened by portions of the *Saul* and *Mason* opinions. It is stated in *Saul* that where the alleged violation is not "fundamental", suppression is required only where there was prejudice in the sense that the search might have occurred. *Saul*, 499 A.2d at 361, quoting from *Mason*, 507 Pa. at 406–07, 490 A.2d at 426.

Regardless of whether the violation was considered "fundamental", the prejudice element would seem to compel suppression. If there had been compliance with the Act, appellant would have never been stopped, "searched" and arrested. Furthermore, under the Act and the facts presented in this case, there is no scenario which would have allowed the Etna officer to make the detention made here.

■ In contrast, in *Saul*, the investigation made was within contemplation of the Act, although strict compliance might have required prior approval from police in the jurisdiction in question or, perhaps, their participation. In *Mason*, the search made was also within the general contemplation of the rule, although the procedure followed raised a

ters of the Act by agreement, and certainly parties to an agreement, even if themselves governmental entities, cannot contractually expand or alter the limitations of applicable law.

274

question of whether there was technical compliance with that rule. (The Supreme Court found that there was.) Thus, although we read *Saul, Mason, Peppers* and *Santina* to support the disallowance of suppression where there is a technical violation of the Act and where the police are engaged in conduct contemplated within the Act, but perhaps simply fail to proceed properly, we do not read those cases to compel the same result when the very purpose and spirit of the Act is violated and there is no question of technical compliance with the Act. If there was never a threat of suppression, the law could be made a mockery by willful non-compliance without any adverse consequences. This, we will not allow.

For the above reasons, we vacate the judgment of sentence, reverse the order denying suppression and remand for a new trial.