572 A.2d 793

**COMMONWEALTH of Pennsylvania**

v.

**Ronald J. FETSICK, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1989.

Decided March 23, 1990.

Petition for Allowance of Appeal
Denied Aug. 1, 1990.

Michael S. Geisler, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

The issue in this appeal is whether the Municipal Police Jurisdiction Act, 42 Pa.C.S. § 8951 et seq., authorizes a borough police officer who is seated in a patrol car outside his primary jurisdiction to pursue and stop a vehicle which is operated in a suspicious manner as it leaves the borough and enters the jurisdiction in which the policeman is seated.

Following a hearing de novo in the Court of Common Pleas of Allegheny County, Ronald J. Fetsick was found guilty of driving a motor vehicle while his operating privileges were under suspension because of a prior alcohol related offense.[1] On appeal, after the trial court denied a post-trial motion in arrest of judgment and imposed sentence, Fetsick contends that the stopping of his vehicle was illegal and that the evidence thereby obtained should have been suppressed.

On March 30, 1988, at or about 3:35 a.m., Officer Ronald Scavo of the Forrest Hills Borough Police Department was parked at a service station at the intersection of Braddock Road and Greensburg Pike in the Borough of Churchill.[2] While parked, Scavo observed a gray Pontiac coupe traveling south on Braddock Road in Forrest Hills. As the vehicle approached, its headlights flickered on and off several times, causing Scavo to believe that the vehicle's headlights were malfunctioning or its operator was trying to give a signal. When the vehicle passed him, Scavo fol-

---

1. See: 75 Pa.C.S. § 1543(b).

2. The service station at which Officer Scavo was parked is situated on the side of Greensburg Pike which is in the Borough of Churchill. The opposite side of Greensburg Pike is in the Borough of Forrest Hills. Both Churchill and Forrest Hills are located in Allegheny County.

lowed, intending to pull the vehicle over as soon as a safe area to do so had been reached. When the vehicle pulled into a high school parking lot, Scavo signaled for the driver to stop. Scavo then approached the vehicle and asked the operator whether there was a problem with the headlights. Scavo also asked the operator to produce for inspection his driver's license and vehicle registration. The operator told the officer that his license was under suspension. Following confirmation of appellant's driving status, Scavo issued a citation to the operator, Ronald J. Fetsick, for driving while his license was under suspension.

The Municipal Police Jurisdiction Act provides, in pertinent part, as follows:

§ 8953. Statewide municipal police jurisdiction

(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

. . . . .

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S. § 8953(a)(2). In interpreting this provision, we are mindful that the Municipal Police Jurisdiction Act "does not fall within the classes of statutes which are to be strictly construed.... [and], therefore, [it] must be liberally construed to effect its objects and to promote justice." *Commonwealth v. Ebersole,* 342 Pa.Super. 151, 155, 492 A.2d 436, 438 (1985), citing 1 Pa.C.S. § 1928(b) and (c). See also: *Commonwealth v. Sestina,* 376 Pa.Super. 441, 446,

546 A.2d 109, 112 (1988); *Commonwealth v. Roberts*, 356 Pa.Super. 309, 315, 514 A.2d 626, 629 (1986). "The general purpose of the statute is to restrict the jurisdiction of police to their own municipalities, on the one hand, while allowing certain practical and policy exceptions to the general rule on the other hand." *Commonwealth v. Merchant*, 385 Pa.Super. 264, 268, 560 A.2d 795, 796–797 (1989). The *Merchant* court observed:

> There is no question that the Act contemplates and allows police to enter another jurisdiction to investigate matters originating in their own jurisdiction and also to arrest an individual for a crime committed in their jurisdiction.
>
> . . . .
>
> The Act clearly does not contemplate or condone extra-territorial patrols. In fact, the entire purpose of the Act is to provide a general limitation on such activity while allowing exceptions, for, in essence, extra-territorial activity in response to specifically identified criminal behavior, that occur[s] within the primary jurisdiction of the police.

*Id.*, 385 Pa.Superior Ct. at 272–273, 560 A.2d at 799 (footnote omitted).

Our research has disclosed no appellate decision which has considered the precise issue which we decide today. However, an arrest under similar circumstances was before the Court of Common Pleas of Adams County in *Commonwealth v. Kuykendall*, 29 D. & C.3d 611 (1984). There, a police officer employed by the Borough of Fairfield had been in the Township of Hamiltonban when he observed the defendant driving on the wrong side of the road within the borough limits. When the defendant crossed into Hamiltonban Township, the officer pursued and ultimately stopped the defendant driver. The officer thereupon observed that the defendant exhibited signs of intoxication and placed him under arrest for driving while under the influence of alcohol. The defendant contended that the arrest was unlawful under 42 Pa.C.S. § 8953(a)(2) because the police pursuit had not commenced within the officer's primary jurisdiction. The court rejected the argument, saying:

The arresting officer personally observed acts committed within the Borough which would have justified a stop and a pursuit. If we adopt defendant's argument, we would be engrafting in the statute a hypertechnical requirement not justified by its plain language. We are instructed to construe the statute in a liberal, common sense manner. *Commonwealth v. Magwood,* [503] Pa. [169], 469 A.2d 115 (1983).

Doing so, we conclude again that the arrest was lawful. *Id.* at 615.

The Statutory Construction Act, 1 Pa.C.S. § 1921(c)(5), suggests that we should also consider "[t]he former law, if any, including other statutes upon the same or similar subjects." Therefore, we have examined the Intra–State Hot Pursuit Act, 42 Pa.C.S. § 8901, which substantially re-enacted the Act of August 6, 1963, P.L. 511, No. 267, § 1, 19 P.S. § 11, as amended, and which, in turn, was repealed and replaced by 42 Pa.C.S. § 8953(a)(2). In *Commonwealth v. Montgomery,* 513 Pa. 138, 518 A.2d 1197 (1986), *cert. denied,* 480 U.S. 935,·107 S.Ct. 1579, 94 L.Ed.2d 769 (1987), the Supreme Court interpreted the prior law by stating:

The Intra–State Hot Pursuit statute does not require that probable cause for an arrest exist before a pursuing officer crosses the boundary of his political subdivision. By its terms, the statute confers extraterritorial authority to make an arrest when (1) an offense has been committed within the officer's political subdivision; (2) pursuit continues following commission of the offense; and (3) the officer exercises only that power of arrest which he would have if he were acting in his own jurisdiction. We do not believe that the legislature intended to make the knowledge possessed by the officer at the time the territorial boundary is crossed to be determinative of the validity of an arrest made pursuant to this statute. Often, pursuit of a criminal suspect has its inception in an officer's reasonable belief that criminal activity has occurred or is about to occur. As "the chase" ensues, pertinent information is radioed to the officer or the

officer makes certain observations with respect to the suspect which then give rise to probable cause for purposes of effectuating a valid arrest. The point at which probable cause arises is immaterial under this statute. *Id.*, 513 Pa. at 144, 518 A.2d at 1200. Similarly, in *Commonwealth v. Garner*, 314 Pa.Super. 566, 569–570, 461 A.2d 302, 304 (1983), the Superior Court said that "[a]ny police officer of any political subdivision may arrest any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision if the officer continues in pursuit of such person after the commission of the offense."

The Superior Court has also held that where a police officer is in pursuit of a vehicle which has been observed being operated illegally within the officer's primary jurisdiction the officer can lawfully arrest the defendant for drunken driving outside of such primary jurisdiction, even though probable cause to suspect defendant's intoxication does not arise until the officer has left his primary jurisdiction. *Commonwealth v. Robb*, 238 Pa.Super. 62, 352 A.2d 515 (1975). The initial stop in *Robb* was proper because the officer had observed the driver's commission of the summary offenses of driving through a red light and failing to drive on the right side of the road within the territorial limits of the officer's primary jurisdiction. See also: *Kinzer v. Commonwealth, Dept. of Transportation*, 119 Pa. Commw. 604, 547 A.2d 863 (1988).

■ We conclude that the arrest in the instant case was lawful. Officer Scavo's authority to stop appellant outside the limits of his primary jurisdiction was not defeated merely because the officer was already outside the territorial limits of such jurisdiction when he observed the flickering lights of appellant's vehicle as it was being operated in Forrest Hills. At that point, the officer could have lawfully stopped the vehicle in Forrest Hills because he had reason to believe that the vehicle's lights were in an unsafe condi-

tion.[3]   The officer could also pursue appellant's vehicle when it left Forrest Hills and entered the Borough of Churchill.   After the officer had stopped the vehicle, he acquired additional information which established probable cause for him to believe that appellant had been driving while his license was under suspension.   He could then make a lawful arrest for driving while under suspension.

We are not persuaded by appellant's argument that 42 Pa.C.S. § 8953(a)(2) must be read to require that police pursuit begin within the territorial limits of the officer's primary jurisdiction.   The suggestion in *Commonwealth v. Fiume*, 292 Pa.Super. 54, 436 A.2d 1001 (1981), that pursuit must begin in the jurisdiction where police are authorized to act and where the crime has been committed was not necessary to the Court's decision and was dictum.   Fiume had been injured in an accident in Plum Borough, Allegheny County, and had been sent by a Plum Borough police officer to a hospital in New Kensington, Westmoreland County.   The officer had radioed to a second Plum Borough officer who was already at the hospital on another matter and asked him to investigate the accident.   The second officer determined that the defendant had been driving while intoxicated and placed him under arrest.   The lead opinion, written for a six judge court, with one judge concurring, three judges concurring in the result, and one judge dissenting, held that there had been "no pursuit" and that the arrest in Westmoreland County, therefore, had been illegal. The observation made by the author of the lead opinion that pursuit must begin in the jurisdiction where the officer is authorized to act is pure dictum and lacks precedential value.   The facts in *Fiume*, as we have observed, are not the same as the facts of the instant case; and, therefore, the lead opinion, in addition to being non-binding, is also not persuasive.

Appellant's reliance on *Commonwealth v. Bable*, 254 Pa.Super. 72, 385 A.2d 530 (1978), is also misplaced.   There, a police officer from Greenville, in Mercer County, had

**3.** See: 75 Pa.C.S. §§ 4107(b)(2) and 4303(a).

heard a radio call announcing a burglary in Hempfield Township, an adjoining municipality. The officer responded to the call and pursued a suspected burglar from Hempfield Township into Adamsville, Crawford County, where an arrest was made. The crime, in *Bable*, had not been committed within the territorial limits of the arresting officer's jurisdiction; and, therefore, it was held that he had no authority to make an arrest in an adjoining county. The municipality in which the pursuit commenced, under these circumstances, was not determinative.

■ Even if appellant's interpretation of the statute were to be accepted, it would not compel suppression of the evidence that appellant had operated his vehicle while his license was under suspension. Not all violations of the Municipal Police Jurisdiction Act require suppression of evidence obtained as a result thereof. In *Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023 (J. 120/89; filed December 13, 1989), the Supreme Court reviewed and discussed this issue as follows:

> In *Commonwealth v. Mason*, 507 Pa. 396, 490 A.2d 421 (1985), we held that suppression of evidence was an inappropriate remedy for a violation of the Rules of Criminal Procedure relating to the issuance and execution of a search warrant outside of a police officer's primary jurisdiction where said violation did not implicate fundamental, constitutional concerns, was not conducted in bad faith or did not substantially prejudice the accused in the sense that the search would not otherwise have occurred or would not have been as intrusive. Automatic exclusion of evidence obtained by searches accompanied by relatively minor infractions of the rules of criminal procedure would be a remedy out of all proportion to the violation, or to the benefits gained to the end of obtaining justice while preserving individual liberties. *Id.* at 407, 490 A.2d at 426, quoting *United States v. Searp*, 586 F.2d 1117 (6th Cir.1978), *cert. denied* 440 U.S. 921[, 99 S.Ct. 1247, 59 L.Ed.2d 474] (1979); *but cf. Commonwealth v. Chandler*, 505 Pa. 113, 477 A.2d 851 (1984).

The Superior Court has recognized that, under *Mason,* suppression of evidence may or may not be the appropriate remedy for a violation of section 8953 of the Act, depending upon all of the circumstances of the case including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the Act, and the prejudice to the accused. *Compare Commonwealth v. Saul,* 346 Pa.Super. 155, 499 A.2d 358 (1985); *Commonwealth v. Peppers,* 357 Pa.Super. 270, 515 A.2d 971 (1986); *Commonwealth v. Sestina,* 376 Pa.Super. 441, 546 A.2d 109 (1988): *with Commonwealth v. Merchant,* 385 Pa.Super. 264, 560 A.2d 795 (1989); *Commonwealth v. Fiume,* 292 Pa.Super. 54, 436 A.2d 1001 (1981); *Commonwealth v. Roberts,* 356 Pa.Super. 309, 514 A.2d 626 (1986). We approve of this case-by-case approach to the determination of the appropriateness of exclusion of evidence allegedly obtained in violation of the Act.

*Id.,* 523 Pa. at 399–400, 567 A.2d at 1030.

The suppression of the evidence of appellant's driving with a suspended license under the facts and circumstances of this case " 'would be a remedy all out of proportion to the benefits gained to the end of obtaining justice while preserving individual liberties unimpaired.' " *Commonwealth v. Saul,* 346 Pa.Super. 155, 162, 499 A.2d 358, 361 (1985), quoting *United States v. Searp,* 586 F.2d 1117, 1123 (6th Cir.1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979). See also: *Commonwealth v. Peppers,* 357 Pa.Super. 270, 273, 515 A.2d 971, 973 (1986).

For all these reasons, we hold that the trial court did not err when it refused to suppress the testimony of the arresting police officer.

The judgment of sentence is affirmed.