## Commonwealth v. McHugh

*Vram Nedurian Jr., assistant district attorney,* for the Commonwealth.

*G. Guy Smith,* for defendant.

SURRICK, *J.,* May 29, 1991—On May 21, 1989, at approximately 1:55 a.m., defendant, Joseph McHugh, was arrested for driving under the influence of alcohol (75 Pa.C.S. §3731). Defendant was also charged with summary traffic violations. After a preliminary hearing the matter was held for court. On September 12, 1989, defendant filed an omnibus pretrial motion/motion to suppress. A hearing was held on this motion on December 14, 1989. At that hearing testimony was presented on behalf of both the Commonwealth and defendant. In addition, counsel agreed that a transcript of the testimony presented at the preliminary hearing would be made a part of the record of the suppression hearing. On December 19, 1989 an order was entered denying defendant's motion to suppress. On December 21, 1989 after a non-jury trial based upon stipulated facts, defendant was found guilty under information

no. 4051A-89 of driving under the influence of alcohol. Post-trial motions were timely filed. After review of briefs submitted by counsel and oral argument, these motions were denied by order dated May 7, 1990. On May 29, 1990, defendant was sentenced to a term of incarceration of not less than 30 days nor more than two years minus one day.[1] Defendant was also directed to pay a fine of $300 plus the costs of prosecution. Defendant has filed a notice of appeal to the Superior Court, thus necessitating this opinion.

The primary issue which defendant has raised for review relates to the denial of his motion to suppress evidence. That issue is: Did the court commit error in deciding that defendant's arrest was lawful, when the arresting officer was outside the territorial limits of his primary jurisdiction?[2]

A review of the record of the suppression hearing reveals the following:

On the morning of May 21, 1989 Patrolman Robert Shaw of the Aston Township Police Department was on routine patrol in Aston Township. (Supp.

---

1. This was defendant's second driving under the influence offense.

2. The issue was also raised as to whether suppression of evidence is the appropriate remedy where there is an unlawful arrest of defendant because of a violation of the Municipal Police Jurisdiction Act. We need not reach this issue because we are satisfied that the act was not violated. We would note, however, that there are Superior Court cases going both ways on the issue. See: *Commonwealth v. Merchant,* 385 Pa. Super. 264, 560 A.2d 795 (1989) (suppression of evidence is appropriate remedy for violation of Municipal Police Jurisdiction Act). But compare: *Commonwealth v. Saul,* 346 Pa. Super. 155, 499 A.2d 358 (1985) (suppression *not* appropriate for violation of Municipal Police Jurisdiction Act); *Commonwealth v. Peppers,* 357 Pa. Super. 270, 515 A.2d 951 (1986) (suppression *not* appropriate); *Commonwealth v. Johnson,* 373 Pa. Super. 312, 541 A.2d 332 (1988) (suppression *not* appropriate).

N.T. 6, 7.) In order to fully patrol his zone of responsibility, Officer Shaw had to briefly enter and cross a small portion of Upper Chichester Township. (Supp. N.T. 7.) Officer Shaw entered Upper Chichester Township on Hidden Valley Road and approached the intersection at Hidden Valley Road and Cherry Tree Road in Upper Chichester Township. (Supp. N.T. 7.) As Officer Shaw approached this intersection, he observed two vehicles traveling southbound on Cherry Tree Road at a high rate of speed. Both vehicles proceeded through a stop sign without stopping. (Supp. N.T. 7, 8.) Officer Shaw turned right onto Cherry Tree Road and began to follow the vehicles. At the same time, he immediately radioed to the Upper Chichester Police Department and advised them as to what he had seen. In addition, Officer Shaw inquired as to whether the Upper Chichester Police wanted him to stop the vehicles. Because he was patrolling in another part of the township, Officer Michael Fanelli of the Upper Chichester Township Police Department responded by requesting that Officer Shaw stop the vehicles. (Supp. N.T. 11, 25, 26; P.H. N.T. 7, 18, 19.) After receiving Officer Fanelli's request, Officer Shaw observed both vehicles swerve on the roadway. (Supp. N.T. 11.) The vehicles then approached the intersection at Cherry Tree Road and Weir Road in Upper Chichester Township. The first vehicle failed to stop at the stop sign and proceeded through the intersection. Defendant's vehicle braked suddenly. This caused it to slide sideways into the intersection and strike the right-hand curb. The vehicle finally stopped facing Weir Road with both right-side tires resting on the curb. (Supp. N.T. 11, 12, 17, 19, 20.) Defendant then drove his vehicle back off the curb and stopped. (Supp. N.T. 12, 19.) Officer Shaw stopped his vehicle behind defendant's

vehicle. At no time did Officer Shaw use his emergency lights or his siren, nor did he signal defendant's vehicle to stop. Defendant's vehicle stopped on its own. (Supp. N.T. 12, 27.) As Officer Shaw, in full uniform, approached defendant's vehicle, he detected an odor of alcohol on defendant's breath. (Supp. N.T. 13.) In order to prevent defendant from driving away from the scene and possibly causing injury to himself or others, Officer Shaw removed the keys from the ignition of defendant's car. He then waited for Officer Fanelli to arrive. Officer Fanelli arrived approximately a minute later. (Supp. N.T. 13.)

When he arrived, Officer Fanelli observed defendant and detected an odor of alcohol emanating from him. He also observed that defendant's eyes were both bloodshot and glassy. (P.H. N.T. 13.) As a result of these observations and what he had been told about defendant's driving, Officer Fanelli administered several field sobriety tests. Defendant failed all of these tests. (P.H. N.T. 13, 14, 15.) Officer Fanelli then placed defendant under arrest and transported him to the Upper Chichester police station. (P.H. N.T. 13.) After arriving at the police station, defendant took a breath test. The test results indicated that defendant's blood alcohol content was 0.17 percent.

Addressing defendant's contention that his arrest was unlawful because the arresting police officer was outside his primary jurisdiction and, therefore, had no authority to make the arrest, the Municipal Police Jurisdiction Act, 42 Pa.C.S. §§8951-8954, provides in pertinent part as follows:

"§8953. *Statewide municipal police jurisdiction*

"(a) *General rule*—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdic-

tion, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the function of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:. . .

"(3) Where the officer has been requested to aid or assist any local, state or federal law enforcement officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance."

Defendant argues that in the instant case there was no request made by Upper Chichester Township police to stop his vehicle. Defendant argues that it was Officer Shaw who made the request and that the Upper Chichester Township police had absolutely no knowledge of criminal activity on the part of defendant, other than what Officer Shaw told them. Defendant contends that Officer Fanelli simply acquiesced in what Officer Shaw was proposing and that this is not the kind of request envisioned by section 8953(a)(3). Defendant suggests that to declare an arrest lawful under these circumstances would thwart the purpose of the Municipal Police Jurisdiction Act. We disagree.

In the case of *Commonwealth v. Ebersole,* 342 Pa. Super. 151, 492 A.2d 436 (1985), our Superior Court held that the Municipal Police Jurisdiction Act must be liberally construed to effect its objects and to promote justice. In so holding, the court made the following observation:

"A careful reading of the subject statute reveals that its purpose is to provide police officers with authority to make arrests outside of their primary jurisdiction in limited situations. In providing such authority, the statute also ensures that police departments will be kept apprised, to the greatest possible extent, of actions taken in the municipality

by police from outside the jurisdiction. Therefore, it is clear that one of the goals of the legislature in enacting the statute was to promote a cohesive working relationship among municipal police departments."

We have found only one case in which the appellate courts have discussed the lawfulness of an arrest under the authority of section 8953(a)(3). In that case, *Commonwealth v. Peppers,* 357 Pa. Super. 270, 515 A.2d 971 (1986), the court liberally construed section 8953(a)(3) to achieve a reasonable result. In *Peppers,* a robbery occurred in Hummelstown, Pennsylvania. The Hummelstown police relayed a description of the getaway car and the suspect over the police radio. A Swatera Township police officer heard the description, observed the vehicle in Swatera Township and followed the vehicle while asking for assistance. Swatera Township police, including the requested assistance, ultimately arrested defendant in Harrisburg. There is no indication that the Harrisburg police were ever notified of the situation. Defendant argued that the arrest was unlawful because the police officer from Hummelstown had no authority to request the Swatera Township police to arrest someone in Harrisburg. The Superior Court rejected this argument and upheld the arrest, after noting that the other options available to the police at the time were unsatisfactory.

In the instant case, Officer Shaw observed defendant committing a crime. Defendant was operating his motor vehicle on the highway in such a manner as to be a danger to himself and to others. Because he was outside of his primary jurisdiction, Officer Shaw radioed his observations to the police who had jurisdiction over the matter. He also asked these local police whether they wanted him to intervene.

Officer Fanelli responded that he did want Officer Shaw to intervene because he was in another part of the township and, therefore, could not handle the matter himself. Officer Shaw pursued defendant and held him at the scene until Officer Fanelli's arrival.

We fail to see how a detention or arrest under these circumstances thwarts the purposes of the Municipal Police Jurisdiction Act. In fact, we believe that this case provides an excellent example of a "cohesive working relationship among municipal police departments." It makes little sense, nor would it advance the purposes of the Municipal Police Jurisdiction Act, to hold that a request for aid under section 8953(a)(3) may only be initiated by the local law enforcement agency. To so hold could, and, most certainly would, in the instant case, lead to an unreasonable result.

It seems clear that what is important under the act is that local police are notified that police from outside the jurisdiction have come into their jurisdiction and that there is an understanding or agreement between the local police and the outside police on the subject at hand. If this is accomplished, the purpose of the Municipal Police Jurisdiction Act is satisfied. We believe that it is of little consequence who makes the initial contact or even why it is made.

Accordingly, we concluded that section 8953(a)(3) permitted Officer Shaw, who was beyond the territorial limits of his primary jurisdiction, to detain defendant, notwithstanding the fact that the request to assist by the local police was in response to an inquiry by Officer Shaw as to whether the local police wanted him to intervene.