## Commonwealth v. Johnston

*Dennis C. McAndrews* and *John B. Lynch, district attorneys,* for the Commonwealth.
*W. David Breen,* for defendant.

HAZEL, *J.,* January 7, 1994—Defendant, James J. Johnston, was arrested for driving under the influence and various Motor Vehicle Code offenses. Following a hearing on defendant's omnibus motion, his suppression motion was granted by order of July 6, 1993, and all evidence seized as a result of the illegal arrest was suppressed. Defendant's remaining motions were dismissed without prejudice. It is from that order that the Commonwealth has appealed, thus necessitating this opinion.

### FINDINGS OF FACT

(1) Officer Joshua Lach, (Officer Lach) has been employed as a patrolman by Springfield Township for 1 1/2 years. (N.T. 6/9/93, p. 6.)

(2) On December 31, 1992 at approximately 2:30 a.m., Officer Lach was on routine patrol travelling west in the 600 block of Baltimore Pike (*Id.,* pp. 6-7.)

(3) Officer Lach was notified by a motorist that he had been cut off by another driver, the action almost caused an accident, and he believed the other driver was drunk. (*Id.,* p. 7.)

(4) Officer Lach was in the right-hand lane. The motorist was in the left-hand lane and yelled over to Officer Lach, whose window was open. (*Id.,* p. 7.)

(5) The motorist pointed to a vehicle in the 800 block of Baltimore Pike. (*Id.,* p. 7-8.)

(6) Officer Lach caught up to a vehicle at Baltimore Pike and South Chester Road. However, because of the presence of other traffic, by the time he did so, he was not sure if that was the car which had been pointed out to him. (*Id.,* pp. 8, 14, 17.)

(7) After stopping for a red light, the vehicle Officer Lach was following turned left on South Chester Road; Swarthmore Borough begins as soon as one leaves Baltimore Pike. (*Id.,* pp. 9, 14-15.)

(8) The vehicle proceeded to a stoplight at South Chester Road and Swarthmore Avenue and made an appropriate left turn onto Swarthmore Avenue. (*Id.,* p. 9.)

(9) Officer Lach followed the vehicle to the intersection of Swarthmore Avenue and Ogden Place, where the motorist disregarded a stop sign. (*Id.,* p. 9.)

(10) The location of the stop was two blocks into Swarthmore Borough. (*Id.* p. 9.) The court takes judicial notice that the first block, from Baltimore Pike to Swarthmore Avenue, is approximately one-quarter mile in length.

(11) Prior to detaining defendant for the stop sign violation, Officer Lach did not personally see defendant commit any traffic violations. He stated that, had he viewed any other violations, he would have stopped defendant sooner. (*Id.,* pp. 14-15, 17.)

(12) From the point Officer Lach was first advised of defendant's allegedly having cut off the anonymous motorist, to the point where he arrested defendant, defendant passed through five stoplights without incident and travelled at least one mile. (*Id.,* pp. 11-12, 17.)

## DISCUSSION

Defendant has moved to suppress all evidence obtained as a result of the traffic stop made in the Borough of Swarthmore by Officer Lach, a Springfield police officer. Defendant argues that he was arrested beyond the limits of Officer Lach's jurisdiction and thus, the arrest was illegal.

This case is controlled by the Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S. §8951 et seq. In section 8951, "primary jurisdiction" is defined as: "The geographical area within the territorial limits of a municipality or any lawful combination of municipalities which employs a municipal police officer."

Section 8953 sets forth specific situations in which an officer may make an arrest outside of his or her primary jurisdiction, and states, in pertinent part:

"Section 8953. Statewide municipal police jurisdiction

"(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions

of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

"(1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where the officer is otherwise acting pursuant to the requirements of the Pennsylvania Rules of Criminal Procedure, except that the service of an arrest or search warrant shall require the consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.

"(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

"(3) Where the officer has been requested to aid or assist any local, state or federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

"(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties

which arise from official matters within his primary jurisdiction.

"(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

"(6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

"(b) Limitation.—Nothing contained in subsection (a) shall be deemed to extend or otherwise enlarge a municipal police officer's power and authority to arrest any person for an offense unless specifically authorized by law."

It is clear from the testimony that Officer Lach's primary jurisdiction was Springfield Township. He was not acting pursuant to a court order (subsection 1); nor requested to aid another officer (subsection 3); nor had he obtained prior consent or authorization from the Swarthmore Police Chief (subsection 4); nor was he on official business in Swarthmore when he viewed the offense (subsection 5); nor did he view a felony (subsection 6). The only arguably applicable section which might authorize this arrest is subsection 2—hot pursuit. We find, however, that the testimony does not support the application of this section.

Officer Lach testified that an anonymous motorist pointed to a vehicle two blocks down Baltimore Pike and indicated that he (the motorist) *thought* that the driver was drunk. Because of other traffic in the vicinity, Officer Lach was not certain that the vehicle he was

following was the one whose driver was allegedly drunk. He did not dispute that the distance from Leamy Avenue, where he was initially advised of a problem, to the intersection of Baltimore Pike and South Chester Avenue, where he pulled up behind defendant's car, is approximately .9 miles. Over the course of that distance, he personally observed no traffic violations. Even when he pulled up behind defendant's vehicle at the stoplight at Baltimore Pike and South Chester Road he still "hadn't gotten to a point where [he] felt [he] could stop the car." (N.T. 6/7/93, p. 20.) He did not have probable cause to stop defendant while within his own jurisdiction. Thus, the Commonwealth's reliance on subsection 2 is misplaced. There is simply no support under any of the scenarios which would allow Officer Lach to exercise authority over defendant, and the arrest was illegal.

Nonetheless, we must determine whether the remedy of suppression is appropriate in the instant case.

In *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985) our Supreme Court held that the automatic exclusion of evidence obtained during a search which was found to have technically violated the Rules of Criminal Procedure was unwarranted. Rather, it concluded that only a "fundamental violation of a rule of criminal procedure" (*i.e.* one which renders a search unconstitutional) should result in automatic suppression. See also, *United States v. Johnson,* 660 F.2d 749 (9th Cir. 1981); *United States v. Vasser,* 648 F.2d 407 (9th Cir. 1980). Where there is no fundamental violation, suppression is required where there was prejudice in the sense that the search might not have occurred had the rule been followed. *United States v. Vasser, supra.*

While this case does not involve a rule of criminal procedure, we believe that the analysis should be the

same. An arrest was made by an officer who had not personally observed any offense within his own jurisdiction; who followed defendant for close to a mile while in his jurisdiction, without observing any activity that would have given rise to probable cause to stop defendant. Indeed, the officer candidly admitted that he wasn't even sure that he was following the correct vehicle until *after* defendant failed to stop at a stop sign, some two blocks in the neighboring municipality.

We believe that the violation of the Municipal Police Jurisdiction Act in question here is analogous to a "fundamental violation of a rule of criminal procedure" as discussed in *Mason, supra.* While our research has disclosed no appellate court case directly on point, we find that this case is factually distinguishable from the other cases which have dealt with the issue of the appropriateness of suppression as a remedy for violation of the Act. (Compare, *Commonwealth v. Garnett,* 418 Pa. Super. 58, 613 A.2d 569 (1992)—suppression of inculpatory statements not warranted by technical violation of MPJA where *Miranda* warnings were given and statements were voluntary; *Commonwealth v. Haynes,* 395 Pa. Super. 322, 577 A.2d 564 (1990), *appeal denied* 527 Pa. 598, 589 A.2d 689 (1991)— illegal investigation by police acting outside their authority not basis for suppression where arrest of murder suspect occurred within the proper jurisdiction; *Commonwealth v. Saul,* 346 Pa. Super. 155, 499 A.2d 358 (1985)—suppression of evidence obtained by investigation conducted outside of officer's municipality was remedy out of proportion to benefits gained to the end of obtaining justice while preserving individual liberties unimpaired; *Commonwealth v. O'Shea,* 523 Pa. 384, 567 A.2d 1023 (1989)—suppression of evidence not warranted where city detectives, investigating

in an adjacent township, identified themselves and obtain the homeowner's consent to search; *Commonwealth v. Fetsick,* 392 Pa. Super. 264, 572 A.2d 793 (1990), *appeal denied* 525 Pa. 642, 581 A.2d 568 (1990)— evidence not suppressed where a borough officer, seated in a patrol vehicle outside of his primary jurisdiction, viewed a vehicle leaving the borough and being operated in a suspicious manner, and entering the jurisdiction in which the office was seated.) As all of these cases are factually distinguishable from the case at bar, we find that suppression was an appropriate remedy.

Because the officer lacked probable cause to arrest defendant based upon anything which may have occurred in his own jurisdiction, the subsequent stop in Swarthmore was constitutionally invalid, and any evidence obtained as a result of the stop must be suppressed as the fruit of the poisonous tree.

Assuming, however, that the stop was constitutionally valid, the evidence still must be suppressed in view of the obvious prejudice to defendant (*i.e.* the search would not have occurred if the rule had been followed). See *Commonwealth v. Mason, supra.*

## CONCLUSIONS

(1) The arrest of defendant was in violation of the Municipal Police Jurisdiction Act.

(2) The evidence obtained as a result of the illegal traffic stop was highly prejudicial to defendant and would not have been obtained but for the violations of the MPJA.

(3) The evidence obtained as a result of the illegal traffic stop must be suppressed.