**430**

STATE of Tennessee, Appellee,

v.

David FOULKS and Bronzo
Gosnell, Appellants.

Court of Criminal Appeals of Tennessee,
at Knoxville.

Jan. 4, 1983.

Permission to Appeal Denied by
Supreme Court May 2, 1983.

William M. Leech, Jr., Atty. Gen., J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, Heiksell H. Winstead, Dist. Atty. Gen., Larry Weems, Asst. Dist. Atty. Gen., Greeneville, for appellee.

T. Wood Smith, Greeneville, for appellants.

OPINION

O'BRIEN, Judge.

These defendants were indicted by the Grand Jury in Greene County, Tennessee for the offense of stealing livestock. The jury found them guilty and sentenced Gosnell to serve not less than five (5) years nor more than ten (10) years in the penitentiary. Foulks was sentenced to serve not less than five (5) years nor more than five (5) years. The case against Gosnell was abated by death.

Several of the issues filed are based on a motion to suppress. Evidently there was a written motion filed, however none appears in this record. The pertinent grounds laid in the motion for new trial state that the trial court erred in failing to grant defendant's motion to suppress evidence, and incorporated by reference, "each and every ground contained in said motion to suppress". At the hearing of the motion the court's comments make it clear that a written motion was filed. The grounds relied upon were (1) that T.C.A. § 38–4211 is unconstitutional; (2) that defendants stop and arrest in the State of North Carolina was without proper legal authority and, (3) the search and seizure were unconstitutional due to the unlawful arrest without a warrant.

 The trial judge denied the motion to suppress. The rule in this State is that findings of the trial court upon questions of fact are conclusive unless the appellate court finds the evidence preponderates against the lower courts judgment. *Mitchell v. State,* 512 S.W.2d 661, (Tenn.Cr.App. 1974).

THE EVIDENCE: We find the evidence in this case to be more than ample to support the trial court's judgment. On January 2, 1981 Sheriff E.Y. Ponder, of Madison County, North Carolina, received a report that a couple of calves were being chased by dogs in a rural area of the county. Conducting an investigation he was unable to find anyone in that vicinity who had any calves missing. Later in the day he responded to another such call and was advised by a Mr. Metcalf that he had chased the dogs off and rescued a calf. This animal was subsequently claimed by two of the brothers of defendant Bronzo Gosnell. These brothers lived in the neighborhood with their father, T.R. Gosnell. Being aware that they did not own any cattle the sheriff drove by the Gosnell place and observed a number of calves in a barn close to their house. His suspicions having been aroused he called the adjacent counties, including Greene County, Tennessee to ascertain if the authorities there had any report of missing stock. The description of two calves missing from Greene County fit that of some of those he had observed in the Gosnell barn. He placed officers in a position to observe the calves, informed Greene County officials he had made the stake-out, and suggested they put a lookout on the State line because the Gosnell's had been alerted and would, in his belief, be endeavoring to move the cattle. Deputy Steve Burns of the Greene County Sheriff's Department testified he received a report from Sheriff Ponder about the events which had occurred in Madison County, North Carolina, including a description of the calves which the Gosnell brothers had claimed. This description fit that of two calves which had been reported stolen in Greene County. There were numerous telephone and radio communications during the remainder of the afternoon as the investigation continued. It was first thought that Billy Gosnell, brother of defendant Bronzo Gosnell, might be endeavoring to bring some of the animals into Tennessee in a brown Toyota or Datsun automobile. A radio report indicated David Foulks might be headed toward Greene County in a blue Ford pick-up truck with a camper body, and this too might have some calves in the back of it. Deputy Burns dispatched vehicles to cover the roads coming into Tennessee from Madison County and he took up a lookout on Highway 70 about 150 to 200 feet on the Tennessee side of the line. After he had been there for something over an hour his superior in the Sheriff's Department came by with a TBI officer. They were on their way to Marshall, North Carolina to meet with the Madison County Sheriff to check on some more calves. He continued with his still-watch and approximately an hour or a little more later he observed a red and white, rack body, Chevrolet pick-up traveling toward the North Carolina line. The license plate on the rear of the vehicle was bent down so that the numbers were invisible. In the back of the truck was a black calf. He had knowledge that a small black calf had been reported stolen in Greene County. He followed after the vehicle. It was an extremely cold night and immediately upon crossing the State line the road began descending a hill. There was ice on the road and they were approximately three miles into the State of North Carolina before he was able to bring the pick-up truck to a stop with the aid of his blue lights and his siren. The vehicle pulled off onto the left side of the road when it stopped. Defendant Foulks emerged from the passenger side of the truck. When the officer recognized him he told him to re-enter the vehicle. On request the driver came around the truck and the officer recognized him although he did not know him by name until he identified himself. He asked for a bill of sale for the calf and the defendant Gosnell could not produce one. Both he and Foulks were placed in the back of the police cruiser while the investigation continued. When Madison County officers arrived defendants were transported to the Madison County Jail and eventually brought back to Tennessee for trial. Gosnell told him divergent stories about where and how he had acquired the calf but concluded with the statement that he was taking it to his father in North Carolina.

■ We think it appropriate to deal first with the question of fresh pursuit. The issue only becomes relevant in relation to the reciprocal statutes existing between the States of Tennessee and North Carolina. Defendant says the arresting officer was not able to articulate any reasonable cause to believe they were suspected of, or had committed, a felony. We disagree. We are satisfied, as was the trial judge, that based upon all of the circumstances, including his own observations, information from police reports, as well as radio and telephone communications from various law enforcement officers, Officer Burns, as a trained police officer, could draw the necessary inferences and make the essential deductions which gave him probable cause to believe that defendants were engaged in the felony of stealing livestock. See *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The legislature in Tennessee enacted the Uniform Law on Fresh Pursuit by Chapter 146, Sec. 8 of the Acts of 1939. (T.C.A. § 40–809, et seq.). The State of North Carolina enacted similar legislation which is included in Chapter 15A of that State's Criminal Procedure Act. The evidence clearly establishes that the officer had reasonable cause to believe defendants were engaged in the felony of stealing livestock at the time they were initially stopped; that there was probable cause to effect their arrest; and the arrest was legal under the reciprocal fresh pursuit laws enacted by the State of Tennessee and the State of North Carolina.

Having found that Officer Burns was engaged in fresh pursuit of the defendants into the State of North Carolina and that there was probable cause to stop them there as well as to place them under arrest, we do not consider the issue questioning the officer's right to arrest the appellants in the State of North Carolina under the authority of T.C.A. § 39–4211, or the constitutionality of that statute. In the first instance this issue was not raised in defendant's motion for new trial and so may not be considered and must be treated as waived. T.R.A.P. Rule 3(e). Nonetheless, the attack on the constitutionality of the statute is based on Article 2, Sec. 17 of the Tennessee Constitution which states in part that, "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended." In this case defendant confuses the caption of an act with the chapter heading of the statute. The purpose of the constitutional provision is to assure that members of the legislature and the public be given notice of legislative proposals and to prevent surprise and fraud in enactments. *State v. Hailey*, 505 S.W.2d 712 (Tenn.1974). As we said in *Farris v. State*, 579 S.W.2d 899, (Tenn.Cr. App.1978). Had there been such a flaw in the caption of the Act as defendant insists, it would not be one which affected individual constitutional rights but applied only to the manner of the enactment of the statute which would render it invalid under the Constitution. The present penalty provisions of T.C.A. § 39–4211 were enacted by Chapter 532, Public Acts of 1974. This chapter had been codified several times over since its enactment which has the effect of revalidating that law. See *Farris v. State*, supra.

■ The only remaining question pertains to the preponderance and legal validity of the evidence. We have said heretofore that the police authorities were acting within the law in apprehending and arresting the defendants. Our discussion of the evidence in relation to earlier assignments also makes it clear that it was abundantly sufficient to warrant a reasonable trier of fact to find guilt beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Tennessee Appellate Procedure Rule 13(e) requires that findings of guilt in criminal actions shall be set aside only if the evidence is insufficient to support such findings by the trier of fact beyond a reasonable doubt. We have reviewed the evidence and find that it overwhelmingly sustains the jury verdict.

The judgment of the trial court is affirmed.

WALKER, P.J., and DWYER, J., concur.