958 A.2d 356

**Robert L. BOST**

v.

**STATE of Maryland.**

**No. 98, Sept. Term, 2007.**

Court of Appeals of Maryland.

Oct. 15, 2008.

342

Julia C. Schiller, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for Appellant.

Beverly Peyton Griffith, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., on brief), for Appellee.

Argued before BELL, C.J., RAKER,* HARRELL, BATTAGLIA, GREENE, MURPHY and DALE R. CATHELL (Retired, specially assigned), JJ.

RAKER, J.

The question presented in this case is whether the Circuit Court for Prince George's County erred in denying the motion to suppress evidence seized by District of Columbia police officers after they entered Prince George's County, Maryland. Appellant challenges the validity of the officers' actions as violating the Maryland Uniform Act on Fresh Pursuit. Maryland Uniform Act on Fresh Pursuit, Md.Code (2001, 2006 Cum.Supp.), § 2–304 to–309 of the Criminal Procedure Article ("the Act").[1] We shall hold that the Act was not violated

---

\* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

**1.** Unless otherwise noted, all subsequent statutory references herein shall be to the Criminal Procedure Article of Maryland Code (2001, 2006 Cum.Supp.).

because the officers reasonably suspected that Bost had committed a felony when they crossed into Maryland and they had probable cause to arrest Bost at the time of his arrest.[2]

## I.

Appellant, Robert Bost, was indicted by the Grand Jury for Prince George's County on charges of possession with intent to distribute cocaine, possession of cocaine, wearing a dangerous weapon concealed on or about the person, and use of a machine gun for an aggressive purpose, which the State later amended to carrying a handgun on or about his person. Bost filed a motion to suppress the evidence seized by the police incident to his arrest, arguing that the out-of-state District of Columbia Metropolitan police, in arresting appellant in Maryland, acted in violation of the Maryland Uniform Act on Fresh Pursuit.

---

The relevant provisions of Uniform Act on Fresh Pursuit in the case sub judice include § § 2–304 and 2–305. Section 2–305 of the Uniform Act on Fresh Pursuit reads in its entirety as follows:

"(a) A member of a state, county, or municipal law enforcement unit of another state who enters this State in fresh pursuit and continues within this State in fresh pursuit of a person to arrest the person on the ground that the person is believed to have committed a felony in the other state has the same authority to arrest and hold the person in custody as has a member of a duly organized State, county, or municipal corporation law enforcement unit of this State to arrest and hold a person in custody on the ground that the person is believed to have committed a felony in this State.

"(b) This section does not make unlawful an arrest in this State that would otherwise be lawful."

Section 2–304(b) sets forth the definition of "fresh pursuit" as follows:

"(b) 'Fresh pursuit' includes:

(1) fresh pursuit as defined by the common law; and

(2) pursuit without unreasonable delay, but not necessarily instant pursuit, of a person who:

(i) has committed or is reasonably suspected of having committed a felony; or

(ii) is suspected of having committed a felony, although a felony has not been committed, if there is reasonable ground for believing that a felony has been committed."

2. Because we find that the officers did not violate the Maryland Uniform Act on Fresh Pursuit, we do not address the State's argument that the Act does not contain an exclusionary rule.

The Circuit Court held an evidentiary hearing on the motion to suppress the evidence. Various officers from the District of Columbia Metropolitan Police Department testified that, on November 29, 2005, sixteen Metropolitan police officers in four unmarked cars were patrolling the 800 block of Southern Avenue, SE, in Washington, D.C., as part of a Focus Mission Unit targeting street level narcotics and firearm recovery in high crime areas. The block divides the District of Columbia and Maryland. At approximately 6:00 p.m., three officers, wearing jackets with "Police" written across them, left their vehicle and walked towards about a dozen people who were drinking alcohol on the sidewalk in a no-loitering area. Officer Phillip testified that he "conducted a 'contact'," at which time, one of the people, later identified as Robert Bost, immediately left, walking away "in a briskful manner" while clutching his right waistband with his right elbow. Officer Phillip said that Bost started picked up his pace, and "immediately took flight on foot crossing the street onto the Prince George's County side." Officer Phillip testified that he had reasonable, articulable suspicion that Bost was concealing something and that based upon his experience, he believed that Bost was "trying to conceal a weapon" and because Bost was "holding ... his waistband, continuously looking back."

Bost ran into a wooded area, falling several times, each time clutching at his right side. The officers followed in pursuit, eventually crossing into Prince George's County, Maryland. Once in Maryland, the officers caught up to Bost and physically restrained him on the ground. As one officer attempted to grab Bost's elbows to turn him onto his side, the officer felt a metal object and indicated to the other officers "gun, gun." The officer unzipped Bost's jacket and discovered a black nine millimeter semiautomatic pistol with 21 rounds of ammunition. The gun was tied around Bost's neck to his body. Bost was arrested, and a further search incident to arrest revealed two large, white, rock-like substances and $140 from the pocket of Bost's pants. The Metropolitan Police immediately contacted Prince George's County officials, who responded and took custody of Bost.

The trial court denied Bost's motion to suppress the evidence. The trial court reasoned as follows:

"This is one of those difficult cases where you have to balance a person's right to run I suppose versus the police department and law enforcement in general's right to inquire based on the circumstances of this case.

"The facts are fairly clear, the defendant is in a drug trafficking area known to the police department in the District of Columbia. A group of people that number between 12 and 15 I believe. When the police arrive the defendant took flight clutching at his waistband. Certainly the police department and the police officers involved in this instance based on their training, experience, had cause to believe that crime was afoot here.

"In chasing the defendant, after ordering him to stop several times, he continued to clutch at his side as if he had a weapon or something else illegal. Of course, they couldn't tell at the time. The question is do they have a right to inquire? I think they do.

"I will deny the motion to suppress for those reasons. I think they had a right to inquire. I appreciate the argument of counsel, it is certainly to his credit. I will deny the motion to suppress."

Following the court's ruling, the case proceeded to trial before the court on a not guilty plea, agreed statement of facts, to the possession with intent to distribute cocaine and carrying a handgun on or about his person.[3] The trial court found Bost guilty and sentenced him to three years incarceration, with all but one year suspended.

Bost noted a timely appeal to the Court of Special Appeals. This Court, on its own initiative, issued a writ of certiorari before the intermediate court decided the appeal to consider the ruling of the Circuit Court on appellant's motion to suppress. *Bost v. State*, 402 Md. 352, 936 A.2d 850 (2007).

---

3. The State entered a *nolle prossequi* for the remaining charges.

## II.

Appellant presents a single argument to this Court. He argues that the Circuit Court erred in denying appellant's motion to suppress, because the Metropolitan police officers violated the Uniform Act on Fresh Pursuit. In particular, appellant maintains that the Metropolitan officers lacked the authority to cross the state line into Maryland under § 2–305 of the Act, which grants the authority for an out-of-state officer "who enters this State in fresh pursuit and continues within this State in fresh pursuit of a person to arrest the person on the ground that the person is believed to have committed a felony in the other state." Appellant contends that the Metropolitan Police Officers did not have reasonable grounds to believe that Bost had committed a felony in the District of Columbia at the time the officers crossed into Maryland. He maintains that the fact that appellant was observed clutching his waistband did not give rise to a reasonable belief that a felony had been committed.

The State presents three arguments to support the search and seizure. First, the State contends that the Metropolitan police officers were authorized under the Act to enter into Maryland in fresh pursuit because they in fact had reasonable suspicion to believe that appellant had committed a felony. The State argues that the Act requires only reasonable suspicion at the time officers cross the border into Maryland, and not probable cause. Under this analysis, the State argues that the totality of the circumstances involved—including factors such as the high crime area in which Bost was located, Bost's unprovoked flight from police, and the police officer's experience and training in recognizing behavior such as Bost's clutching at his waistband as consistent with possession of a concealed weapon—meets the standard of reasonable suspicion. Second, the State argues that the arrest was lawful because one of the District of Columbia police officers had been deputized by the United States Marshal Service and therefore, while on duty, he is authorized to go anywhere to investigate cases and to arrest outside of the District of Columbia. Finally, the State argues that even if the statute

was violated, the evidence should not be suppressed because the Act does not contain an exclusionary rule.

## III.

In reviewing the ruling on a motion to suppress evidence, we consider only the evidence contained in the record of the suppression hearing. *Rush v. State*, 403 Md. 68, 82–83, 939 A.2d 689, 697 (2008). We extend great deference to the hearing judge's findings of fact and those findings will not be disturbed unless clearly erroneous. *Id.* at 83, 939 A.2d at 697. We review the evidence and the inferences that may be reasonably drawn in the light most favorable to the prevailing party. We make our own independent appraisal as to whether a constitutional right has been violated by reviewing the law and applying it to the facts of the case. *Id.*

## IV.

### A.

Appellant does not contend that the police officers lacked probable cause to arrest him. Nor does he contend that his arrest violated the Fourth Amendment to the United States Constitution or Article 26 of the Maryland Declaration of Rights. His argument on appeal rests solely on an interpretation of the Uniform Act found at § 2–305 of the Criminal Law Article. Appellant claims that the Metropolitan police officers lacked the authority under the statute to cross the border into Maryland at the time they did so, and that the statute would be ineffective unless read broadly to include an exclusionary rule.[4] In order to determine whether the Act was violated, we look to the canons of statutory interpretation.

The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *Tribbitt v. State*, 403 Md. 638, 645, 943 A.2d 1260, 1264 (2008). In

---

4. Appellant does not argue that we should read a general exclusionary rule into Maryland law for a violation of Article 26.

construing a statute, we look first to the plain language of the statute, and if that language is clear and unambiguous, we look no further than the text of the statute. *Ishola v. State*, 404 Md. 155, 160, 945 A.2d 1273, 1276 (2008). A plain reading of the statute assumes none of its language is superfluous or nugatory. *Tribbitt, supra*, 403 Md. at 646, 943 A.2d at 1264. "We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Stoddard v. State*, 395 Md. 653, 662, 911 A.2d 1245, 1250 (2006) (quoting *Taylor v. NationsBank*, 365 Md. 166, 181, 776 A.2d 645, 654 (2001)). We have often stated that if the language of the statute is not ambiguous, either inherently or by reference to other relevant laws or circumstances, our inquiry as to legislative intent ends. *Chow v. State*, 393 Md. 431, 443–44, 903 A.2d 388, 395 (2006). If the meaning of the plain language is ambiguous or unclear, to discern legislative intent, we look to the legislative history, prior case law, the purposes upon which the statutory framework was based, and the statute as a whole. *Stoddard, supra*, 395 Md. at 662, 911 A.2d at 1250.

The Uniform Act on Fresh Pursuit, including Maryland's version of the model act, "consists of a grant of authority from the enacting state to officers from other states, permitting those officers to enter the enacting state." *State v. Meyer*, 183 Or.App. 536, 53 P.3d 940, 944 (Or.Ct.App.2002). The Maryland Uniform Act on Fresh Pursuit reads, in relevant part, as follows:

"(a) A member of a state,[5] county, or municipal law enforcement unit of another state who enters this State in fresh pursuit and continues within this State in fresh pursuit of a person to arrest the person on the ground that the person is believed to have committed a felony in the other state has the same authority to arrest and hold the person in custody as has a member of a duly organized State,

---

5. "State" is defined as any state or the District of Columbia. § 2–304.

county, or municipal corporation law enforcement unit of this State to arrest and hold a person in custody on the ground that the person is believed to have committed a felony in this State.

"(b) This section does not make unlawful an arrest in this State that would otherwise be lawful."

§ 2–305. Based on a plain reading, the statute authorizes a state, county, or municipal law enforcement officer of another state to enter Maryland if in "fresh pursuit." Both Maryland and the District of Columbia expressly permit officers from the other jurisdiction to enter their respective state territories for the purpose of pursuing persons (in hot pursuit) who reasonably are believed to have committed a felony. A valid arrest requires probable cause. U.S. Const. amend. IV; *Johnson v. State*, 356 Md. 498, 504, 740 A.2d 615, 618 (1999). In keeping with the law of arrest, the Act requires that the officer have probable cause at the time of the arrest. In order to determine whether the officer has authority to enter into Maryland, however, it is necessary to examine the concept of "fresh pursuit" and its statutory definition.

 The Act, in § 2–304(b), defines fresh pursuit as follows:

"(b) 'Fresh pursuit' includes:

(1) fresh pursuit as defined by the common law; [6] and

---

**6.** The Uniform Act on Fresh Pursuit, in addition to providing a statutory definition of fresh pursuit, incorporates fresh pursuit as defined by the common law. In *United States v. Atwell*, 470 F.Supp.2d 554 (D.Md. 2007), the United States District Court for Maryland discussed the authority of a police officer under the common law to effect an arrest outside of the officer's jurisdiction. The court noted as follows:

"Under Maryland common law, a police officer acting outside of the geographical confines of which he is an officer is generally without official authority to apprehend an offender unless he is authorized to do so by a state or federal statute. *See Stevenson v. State*, 287 Md. 504, [508], 413 A.2d 1340, 1343 (1980); *Horn v. City of Seat Pleasant, Md.*, 57 F.Supp.2d 219, 226 (D.Md.1999); *see also People v. Marino*, 80 Ill.App.3d 657, 400 N.E.2d 491, 494, 36 Ill.Dec. 71 (1980); *Perry v. State*, 303 Ark. 100, 794 S.W.2d 141, 144 (Ark.1990).

"Two exceptions have developed under the common law rule, whereby an officer acting outside his jurisdiction may arrest an individual:

(2) pursuit without unreasonable delay, but not necessarily instant pursuit, of a person who:

(i) has committed or is reasonably suspected of having committed a felony; or

(ii) is suspected of having committed a felony, although a felony has not been committed, if there is reasonable ground for believing that a felony has been committed."

We focus on the language of § 2–304(b)(2)(i), which includes pursuit of one who "is reasonably suspected of having committed a felony."

 Under the Act, an out-of-state officer is authorized to enter Maryland to arrest and hold a person in custody if that officer has reasonable suspicion that a person has committed a felony. "Reasonable suspicion" is a less demanding standard than probable cause. *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 675, 145 L.Ed.2d 570 (2000); *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). As the Supreme Court stated in *Sokolow*, reasonable suspicion is more than an "inchoate and unparticularized suspicion or 'hunch,'" but is "considerably less than proof of wrongdoing by a preponderance of the evidence" and less than probable cause, which is " 'a fair probability that contraband or evidence of a crime will be found.'" *Sokolow, supra*, 490 U.S. at 7, 109 S.Ct. at 1585. While less than probable cause is required under the Act, nonetheless, "reasonable suspicion" requires that the officer articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

------

(1) if the officer is engaging in fresh pursuit of a suspected felon; or
(2) if the officer is acting with the authority of a private citizen to make an arrest."

*Id.* at 563, 413 A.2d 1340 (footnote omitted). Therefore, under the common law, police officers may effect an extra-territorial arrest outside their jurisdiction if they are in "fresh pursuit" of a person that has committed a felony. *Id.; Doolittle v. State*, 154 P.3d 350, 355 (Wyo. 2007).

■ Our reading of the statute conforms with the purpose of the Uniform Act on Fresh Pursuit, which is to extend authority to officers from other jurisdictions to cross state lines to arrest criminals who might otherwise use state lines to escape apprehension. THE COUNCIL OF STATE GOVERNMENTS, THE HANDBOOK ON INTERSTATE CRIME CONTROL 119 (Rev. ed.1966), states as follows:

> "The purpose of the Uniform Act on Interstate Fresh Pursuit is to prevent criminals from utilizing state lines to handicap our police in their apprehension. At the present time our most desperate criminals head straight across state lines after the commission of a crime, knowing that there is comparative safety beyond the border. For in the foreign state the pursuing officer from the state wherein the crime was committed is, in general, no longer an officer. This abnormality, so contrary to all justice and reason, is remedied in a simple manner by the Fresh Pursuit Act. Thereunder, the moment an officer in fresh pursuit of a criminal crosses a state line, the state he enters will authorize him to catch and arrest such criminal within its bounds. The statute grants this right only when the officer is in fresh pursuit of a criminal, that is, pursuit without unreasonable delay, by a member of a duly organized peace unit, and only in cases of felonies or supposed felonies occurring outside the boundaries of the state adopting the act. It is thus based upon the little-known common-law doctrine of fresh pursuit, from which the statute has derived its name."

Thus the overall intent is a grant of authority.

The Court of Special Appeals reached the same conclusion when considering the Uniform Act on Fresh Pursuit in *Hutchinson v. State*, 38 Md.App. 160, 380 A.2d 232 (1977). In *Hutchinson*, a Montgomery County police officer entered into the District of Columbia and arrested Hutchinson in relation to a homicide. Hutchinson was convicted and sentenced for felony murder and use of a handgun in the Circuit Court for Montgomery County. Hutchinson appealed, arguing that, among other things, the arrest by a Montgomery County officer in the District of Columbia was unlawful. It was clear

that the officer had probable cause at the time of Hutchinson's arrest, but not at the point at which the officer crossed the border into the District of Columbia, following Hutchinson's car. Interpreting the District of Columbia statute, which mirrors essentially the Maryland statute, the Court of Special Appeals stated as follows:

> "Was the statute intended to blind the eye and stop the ear of an officer who *entered* the District under its authority? We think not.

> "The circumstances in *State v. Tillman*, 208 Kan. 954, 494 P.2d 1178 (1972), closely parallel the subject case. Both Kansas and Missouri had enacted the Uniform Law on Fresh Pursuit. In *Tillman*, as here, the arresting officers *entered* the foreign State without probable cause to arrest. In *Tillman*, as here, a missing factor essential to probable cause was supplied by knowledge gained in the foreign State. The Supreme Court of Kansas, sustaining the validity of the arrest, said at 1182:

>> " 'In the case at bar the robbers fled from the scene of the robbery in Kansas City, Kansas, to Kansas City, Missouri, where they were apprehended 90 minutes later. The pursuit was continuous, uninterrupted and without unreasonable delay. It was a "fresh pursuit"; hence the arrest of the appellants by the Kansas police officers in Missouri was a valid arrest since the police had actual knowledge that the robbery had been committed and since the appellants were identified [in Missouri] as the robbers by Craig (Moon) Davis prior to their arrest at Southtown Motors.' "

*Id.* at 168–69, 380 A.2d at 236–37 (emphasis in original). The court then reasoned as follows:

> "[T]he Uniform Act on Fresh Pursuit should not be so narrowly construed as to alter the firmly fixed rule of law that the existence of probable cause at the time of an arrest should be the measure of its validity. We think that the statute intended no such alteration.

"Accordingly, we hold that the statute was intended to permit any member of an organized peace unit of any State to *enter* in fresh pursuit; to *continue* in fresh pursuit within the District; and *to arrest the person pursued, whom he has probable cause to believe, at the time of arrest, committed a felony in the place of the officer's jurisdiction.*"

*Id.* at 172, 380 A.2d at 238 (emphasis in original). Implicit in the court's holding was that probable cause was not required when the officer crossed into the District of Columbia in fresh pursuit.

Our holding comports with the standard adopted by several states that have examined the issue. In *State v. Ferrell,* 218 Neb. 463, 356 N.W.2d 868 (1984), the Supreme Court of Nebraska held that requiring probable cause at the time of crossing the state line into Iowa "is too strict an interpretation of the statute which authorizes pursuit of a person 'who is reasonably *suspected* of having committed a felony.' This is sufficient to authorize an investigatory stop." *Id.* at 870 (emphasis in original); *see also State v. Joy,* 637 So.2d 946, 948 (Fla.Dist.Ct.App.1994) (finding, when interpreting the Florida Uniform Act on Fresh Pursuit, Fla. Stat. § 901.25 (2004), that "[t]he officer's reasonable suspicion that the truck was speeding justifie[d] the extraterritorial stop under a fresh pursuit theory"). One commentator notes as follows:

"In some states, fresh pursuit statutes have been interpreted to authorize not only pursuit in order to arrest, but also pursuit for the purpose of conducting a *Terry* stop [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ]. *State v. Merchant,* 490 So.2d 336, 339 (La.Ct.App.1986); *State v. Dahlheimer,* 413 N.W.2d 255, 257 (Minn.Ct.App. 1987); *Commonwealth v. Montgomery,* 513 Pa. 138, 144, 518 A.2d 1197, 1201 (1986), cert. denied, 480 U.S. 935, 107 S.Ct. 1579, 94 L.Ed.2d 769 (1987). The justification generally given is that police need not have probable cause to arrest at the time they cross their jurisdictional limits, but only at the time they make the arrest. *Montgomery,* 513 Pa. at 144–46, 518 A.2d at 1200–01. One court has noted also its belief that a close pursuit stop is within the 'spirit' of the

state fresh pursuit statute. *State v. Bickham,* 404 So.2d 929, 932 (La.1981). In dissent, one justice has argued that investigation should not justify fresh pursuit because the purpose of a *Terry* stop is to prevent presently occurring criminal activity, whereas the purpose of fresh pursuit is the apprehension of a suspect where a crime has already been committed. *Montgomery,* 513 Pa. at 147–49, 518 A.2d at 1202 (Zappala, J., dissenting)."

Judith V. Royster & Rory SnowArrow Fausett, *Fresh Pursuit onto Native American Reservations,* 59 U. Colo. L.Rev. 191, 246 n. 122.[7]

## B.

■■■ We turn to the facts of the instant case. Reviewing whether reasonable suspicion exists, we have stated as follows:

"While there is no litmus test to define the 'reasonable suspicion' standard, it has been defined as nothing more than 'a particularized and objective basis for suspecting the particular person stopped of criminal activity,' and as a common sense, nontechnical conception that considers factual and practical aspects of daily life and how reasonable and prudent people act.... Moreover, '[w]hen evaluating the validity of a detention, we must examine the totality of the circumstances the whole picture.' "

*Stokes v. State,* 362 Md. 407, 415–16, 765 A.2d 612, 616 (2001) (internal citations omitted). The test is "the totality of the circumstances," viewed through the eyes of a reasonable, prudent, police officer. In *Ferris v. State,* 355 Md. 356, 391–92, 735 A.2d 491, 510 (1999), we explained as follows:

"[A] police officer, 'by reason of training and experience, may be able to explain the special significance of ...

---

**7.** A handful of states have adopted a contrary view and assumed probable cause is required in order to pursue across state lines. *See People v. McKay,* 10 P.3d 704, 706 (Colo.Ct.App.2000); *State v. Cochran,* 372 A.2d 193, 195 (Del.1977); *Gullick v. Sampson,* 118 N.H. 826, 395 A.2d 187. 118 N.H. 826, 395 A.2d 187, 187–88 (1978); *State v. Foulks,* 653 S.W.2d 430, 432 (Tenn.Crim.App.1983).

observed facts.' Thus, conduct that appears innocuous to the average layperson may in fact be suspicious when observed by a trained law enforcement official. The Fourth Amendment, however, does not allow the law enforcement official to simply assert that apparently innocent conduct was suspicious to him or her; rather the officer must offer 'the factual basis upon which he or she bases the conclusion.' "

In *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the Supreme Court elaborated on the concept of reasonable suspicion, stating as follows:

"Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause ... [An] unverified tip from [a] known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a *Terry* stop. Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion."

*Id.* at 330, 110 S.Ct. at 2416 (internal citations omitted). In *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), former Chief Justice Burger discussed the appropriate test, the totality of the circumstances test, pointing out that it contains two interdependent analytical techniques:

"The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective ob-

servations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions— inferences and deductions that might well elude an untrained person."

The United States Supreme Court has made clear that unprovoked flight is enough to support reasonable suspicion that a crime has been committed. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). The Court explained as follows:

"In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *United States v. Brignoni-Ponce*, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Florida v. Rodriguez*, 469 U.S. 1, 6, 105 S.Ct. 308, 83 L.Ed.2d 165. 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) *(per curiam); United States v. Sokolow*, [490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)]. Headlong flight— wherever it occurs—is the consummate act of evasion: [i]t is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. *See United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). We conclude Officer Nolan was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further."

*Id.* at 124–25, 120 S.Ct. at 676; *see also Collins v. State,* 376 Md. 359, 373, 829 A.2d 992, 1000 (2003); *Price v. State,* 227 Md. 28, 33, 175 A.2d 11, 13 (1961).

■■■ The Circuit Court, in its ruling, pointed out that the police saw appellant in a drug trafficking area, and that when the police approached, he fled, clutching his waistband. The court found also that after ordering appellant to stop several times, appellant continued to clutch at his side as if he had a weapon or something else illegal. The court's finding that "they had a right to inquire" was in effect a finding that the officer's had reasonable suspicion to stop appellant for further investigation.

We hold that the Metropolitan police officers had reasonable suspicion to believe that appellant had committed a felony and therefore, they were authorized under the Act to pursue appellant into the State of Maryland.[8] Under the law of the District of Columbia, it is a felony to carry a pistol without a license. D.C.Code § 22–4504(a)(1) (2001); *Henson v. United States,* 399 A.2d 16, 20 (D.C.1979) ("the courts in this jurisdiction generally define 'felony' as any offense for which the maximum penalty provided for the offense is imprisonment for more than one year...."). We take judicial notice of the law of the District of Columbia pursuant to Md.Code (1974, 2006 Repl.Vol.), § 10–501 of the Courts & Judicial Proceedings Article, which states that "[e]very court of this State shall take judicial notice of the common law and statutes of every state, territory, and other jurisdiction of the United States, and of every other jurisdiction having a system of law based on the common law of England."

Appellant was seen by the police in a high crime, drug trafficking area. Appellant fled from the police and the flight was unprovoked. The nature of the area is a factor in

---

8. Because we find in the State's favor that reasonable suspicion existed, we need not address the State's secondary argument, that one of the Metropolitan police officers involved in the pursuit and arrest had authority to pursue across state lines because he was deputized as a federal marshal.

assessing reasonable suspicion. *See, e.g., United States v. Mendenhall*, 446 U.S. 544, 563–64, 100 S.Ct. 1870, 1882, 64 L.Ed.2d 497 (1980) (Powell, J., concurring) (noting that "characteristics of the area" is a permissible factor in the analysis of reasonable suspicion); *Anderson v. State*, 282 Md. 701, 707 n. 5, 387 A.2d 281, 285 n. 5 (1978) ("character of area where the stop occurs" is relevant to determination of reasonable suspicion) (quoted in *Stokes, supra*, 362 Md. at 407, 765 A.2d at 617). The officers testified that they believed that appellant was clutching and concealing a weapon at his right side and that, based on their experience with other suspects, the clutching conduct was consistent with possession of a concealed weapon. Guns often accompany drugs, and many courts have found an "indisputable nexus between drugs and guns." *United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir.1998); *see also Dashiell v. State*, 143 Md.App. 134, 153, 792 A.2d 1185, 1196 (2002) (noting that "[p]ersons associated with the drug business are prone to carrying weapons").

The Metropolitan police officers were authorized under the Uniform Act on Fresh Pursuit to enter into Maryland in fresh pursuit of appellant. The Circuit Court did not err in denying appellant's motion to suppress the evidence seized from him.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*

BELL, C.J., HARRELL and GREENE, JJ., Dissent.

Dissenting Opinion by BELL, C.J., which HARRELL, and GREENE, JJ., join.

The issue this case presents is whether the District of Columbia police officers who pursued Robert Bost, the petitioner, into Maryland pursuant to Maryland's Fresh Pursuit Act, Maryland Code (2001, 2006 Cum.Supp.), §§ 2–304—2–309 of the Criminal Procedure Article, as justification, had a reasonable suspicion to believe that Bost was committing or had committed a felony in the District of Columbia. The facts found by the motions judge in this case lead me to conclude

that they did not have the necessary level of suspicion—it must be both a reasonable one and relate to a felony—to pursue Bost.

## I. Facts

On November 29, 2005, at approximately 6 P.M., Officer Phillip, a District of Columbia Metropolitan Police Officer, was patrolling the 800 block of Southern Avenue, SE, in Washington, D.C., along with sixteen other D.C. police officers. They were in several unmarked vehicles. Officer Phillip, the State's central witness at the suppression hearing, described his encounter with the petitioner, as follows:

"[Q]: Describe for the judge what the defendant did as you approached?

"[Phillip]: As I stated, as we exited the vehicle we observed the 12 male subjects standing on the sidewalk drinking and congregating, at which time Mr. Bost immediately observed us and immediately started walking away in a briskful manner clutching his right waistband with his right elbow.

"[Q]: Describe in more detail what you observed?

"[Phillip]: As he is walking away he is clutching his right waistband area with his elbow.

"[Q]: What did he have on?

"[Phillip]: To my recollection, blue jeans, black North Face Parka Jacket.

"[Q]: The area he is clutching for the record you were indicating that it is outside I guess of his jacket, his right side?

"[Phillip]: Yes.

"[Q]: You observed it as he is walking away?

"[Phillip]: Yes. He is clutching the right waistband area with his elbow as he is walking away.

"[Q]: What are you and the other officers doing?

"[Phillip]: It immediately draws our attention to him.

"[Q]: Why is that?

"[Phillip]: He is the only one from the 12 male subjects walking away. They all stood there when we exited our vehicles.

"[Q]: Did you tell them to stand still?

"[Phillip]: No.

"[Q]: The defendant was walking away. What happened next?

"[Phillip]: At which time he continued clutching his right side with his elbow, started walking away in a briskfully [sic] manner, started picking up his pace. At which time he immediately took flight on foot crossing the street onto the Prince George's county side. At that given time with my training and my experience gave me reasonable, articulable suspicion to believe that Mr. Bost was trying to conceal a weapon."

The Maryland Fresh Pursuit Act permits out-of-state law enforcement officers to enter Maryland and make an arrest so long as they are in "fresh pursuit" of a felon or one who is "reasonably suspected" of being a felon, *i.e.*, of having committed a felony. *See* Md.Code (2001, 2006 Cum.Supp.), § 2–305 of the Criminal Procedure Article.[1]

---

**1.** Md.Code (2001, 2006 Cum.Supp.), § 2–304(b) of the Criminal Procedure Article provides:

" 'Fresh pursuit' includes:

"(1) fresh pursuit as defined by the common law; and

"(2) pursuit without unreasonable delay, but not necessarily instant pursuit, of a person who:

"(i) has committed or is reasonably suspected of having committed a felony, or

"(ii) is suspected of having committed a felony, although a felony has not been committed, if there is reasonable ground for believing that a felony has been committed."

Subsection (b)(2) prescribes two scenarios justifying fresh pursuit of a suspected person into Maryland: subsection (b)(2)(i), when the suspect has committed a felony, and subsection (b)(2)(ii), when the suspect is only suspected of committing a felony, but did not. These two subsections do not state that different standards apply when a felony has or has not been committed. Instead, the use of "reasonable ground" in (b)(2)(ii) merely restates the standard of "reasonably suspected" in (b)(2)(i). These two formulations are, in essence, synonymous with each other; there simply is not any substantive difference between

## II. Analysis

When reviewing a trial court's ruling on a motion to suppress, this Court considers only the facts and information contained in the record of the suppression hearing. *Longshore v. State,* 399 Md. 486, 498, 924 A.2d 1129, 1135 (2007); *State v. Nieves,* 383 Md. 573, 581, 861 A.2d 62, 67 (2004); *Laney v. State,* 379 Md. 522, 533, 842 A.2d 773, 779 (2004); *Dashiell v. State,* 374 Md. 85, 93, 821 A.2d 372, 376 (2003) (quoting *State v. Collins,* 367 Md. 700, 706–07, 790 A.2d 660, 663–64 (2002)); *Wilkes v. State,* 364 Md. 554, 569, 774 A.2d 420, 429 (2001). Deferring to the motions judge's determination and weighing of first-level factual findings, disturbing neither the determinations, or the weight given to them, unless either or both is shown to be clearly erroneous, *Longshore,* 399 Md. 486, 498, 924 A.2d 1129, 1135 (2007); *Nieves,* 383 Md. at 581–82, 861 A.2d at 67; *Laney,* 379 Md. at 533–34, 842 A.2d at 779–80; *Dashiell,* 374 Md. at 93–94, 821 A.2d at 378; *State v. Rucker,* 374 Md. 199, 207, 821 A.2d 439, 444 (2003); *Riddick,* 319 Md. at 183, 571 A.2d at 1240; *Perkins v. State,* 83 Md.App. 341, 346, 574 A.2d 356, 358 (1990). *See* Rule 8–131,[2] we view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the party prevailing on the motion, in this case, the State. *Longshore,* 399 Md. 486, 498, 924 A.2d 1129, 1135 (2007); *Jones v. State,* 343 Md. 448, 458, 682 A.2d 248, 253 (1996). On the other hand, however, the trial court's determination as to

---

"reasonably suspected" and "reasonable ground for believing" when determining if an out-of-state law enforcement officer was indeed in "fresh pursuit" under the Act.

2. Maryland Rule 8–131 provides, as relevant:

"(a) Generally. The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

whether, or not, the facts found rise to the level of reasonable suspicion is reviewed *de novo*. *Stokes v. State*, 362 Md. 407, 414, 765 A.2d 612, 615 (2001). *See also In re David S.*, 367 Md. 523, 529, 789 A.2d 607, 610 (2002) (explaining that *de novo* review given to the trial court's determination as to whether, under the facts found, there was reasonable suspicion to make a warrantless search); *Stokes*, 362 Md. at 413–14, 765 A.2d at 615; *Ferris v. State*, 355 Md. 356, 368, 735 A.2d 491, 497 (1999). Stated differently, we make our "own independent constitutional appraisal [of the ultimate constitutional question], by reviewing the law and applying it to the peculiar facts of the particular case." *Jones*, 343 Md. at 457, 682 A.2d at 253.

With regard to this latter point, this Court has recognized that, determining whether certain facts give rise to "reasonable suspicion," of criminal conduct is not an exact science. *Longshore v. State*, 399 Md. at 507, 924 A.2d at 1141. We have made clear, however, that, in order for there to be "reasonable suspicion," there must be "a particularized and objective basis" for suspecting that the person stopped has engaged in, or committed, criminal activity. *Longshore v. State*, 399 Md. 486, 507, 924 A.2d 1129, 1141 (2007) (citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)). A similar, if not the identical, definitional conundrum is presented by our fresh pursuit statute's requirement that the trigger for pursuit be that the person pursued be "reasonably suspected of having committed a felony" or that "there is reasonable ground for believing that a felony has been committed." The *Longshore* formulation addresses that issue and applies as well to this case. Thus, applying the *Longshore* test, in order to pursue Bost into Maryland, the D.C. police officers had to have a "particularized and objective" basis to believe that Bost had committed a felony, not just simply that he was engaged in unspecified, generalized criminal conduct. A mere "hunch" by D.C. police officers that the conduct they actually observed was felonious

would not be sufficient under the Act. *Longshore,* 399 Md. at 508, 924 A.2d at 1141.

The only conduct that Officer Phillip and his fellow law enforcement officers observed was Bost clutching his side as he walked away from a group of approximately twelve men, whom they observed were drinking alcohol in open containers in a "high crime area." Officer Phillip never saw a gun; he never saw anything resembling a weapon in Bost's possession when he made his way toward the group; and he never saw drugs, either being used or exchanged. There are many reasonable inferences that could be drawn from Bost's conduct, not least of which is that he wanted to avoid getting in trouble for drinking beer from an open container in public. That surely is not a felony. *See* D.C.Code § 25–1001 (2005) (punishing consumption of alcohol in public places in D.C. as a misdemeanor). Perhaps Bost, as he was certainly permitted to do, notwithstanding his presence in a "high crime area," simply decided that he did not want to talk to the police and was clutching his newspaper, or some other innocent object, one that he may not have wanted the police to see, under his arm as he walked away. The possibilities of what Bost might have been clutching are endless. To be sure, those possibilities may have included objects that were illegal to possess, i.e. drugs or weapons; but to concede that is merely to concede what the police believed, that Bost was engaged in criminal conduct, the nature of which was not and could not be known in any particularized or objective manner until, as done in this case, he was stopped and searched. The point is this: there was nothing about Bost's behavior that could possibly lead one reasonably to believe that Bost had committed a felony. True, his conduct might have been suspicious to the police and it may well have justified the belief that he was engaged in "some" criminal conduct. That conduct was not such as to justify a belief that a felony had been or was being committed. The Fresh Pursuit Act required of Officer Phillip more than just suspicion; he had to reasonably suspect Bost of having committed a felony and there must have been reasonable ground for believing that that was so.

The majority's decision today allows a law enforcement officer's invocation of "buzzwords"—"high crime area," "my training and my experience," "reasonable, articulable suspicion"—to substitute for the judicial function. The trial court's ruling at the suppression hearing makes, and emphasizes, the point:

> "[The Court]: The facts are fairly clear, the defendant is in a drug trafficking area known to the police department in the District of Columbia. A group of people that number between 12 and 15 I believe. When the police arrive the defendant took flight [3] clutching at his waistband. Certainly the police officers involved in this instance based on their training, experience, had cause to believe that crime was afoot here. In chasing the defendant, after ordering him to stop several times, he continued to clutch at his side as if he had a weapon or something else illegal."

It is significant that the motions judge acknowledged the lack of particularization and objectivity with regard to what, if any, criminal conduct was observed or was afoot, noting only that the officers' experience led them to believe crime was afoot and conceding that the defendant was acting "as if he had a

---

**3.** In *Watkins v. State*, 288 Md. 597, 420 A.2d 270 (1980), this Court upheld the defendant's conviction, after ruling that the police had a reasonable articulable suspicion to conduct a *Terry* stop where that officer, approaching a group of 30 to 50 people standing on the corner while responding to a call for assistance from another police officer involved in a foot pursuit in a high-crime area, heard someone yell "run, police" and immediately thereafter observed the defendant running. *Watkins*, 288 Md. at 599, 420 A.2d at 271. Although the defendant in *Watkins* was not one of the people originally being pursued, he still was arrested and subsequently convicted of serious drug charges. *Watkins*, 288 Md. at 598–99, 420 A.2d at 271. Judge Cole's comments about the majority's decision in *Watkins* are instructive and warrant repeating here:

> "The Court's decision today has the potential for becoming a true chimera, especially in the economically depressed areas of the State where police-community relations are, to say the least, strained. The Court gives license to the police to stop any individual who runs when the police happen upon the scene."

*Watkins v. State*, 288 Md. 597, 617, 420 A.2d 270, 281 (1980) (Cole, J., dissenting).

weapon or something else illegal." The trial court, in this case, failed to heed the admonition given by Judge Wilner:

> "The command that we generally respect the inferences and conclusions drawn by experienced police officers does not require that we abandon our responsibility to make the ultimate determination of whether the police have acted in a lawful manner or that we 'rubber stamp' conduct simply because the officer believed he had a right to engage in it."

*Ransome v. State,* 373 Md. 99, 110–11, 816 A.2d 901, 908 (2003).

Not once does the motions judge's ruling mention the word "felony" or even engage in an analysis of whether the objective facts of Officer Phillip's "contact" with Bost rose to the level sufficient to give an officer reasonable suspicion to believe that Bost had committed a felony. The closest the trial court comes to mentioning any sort of felony at all is hypothecating that Bost could have had a "weapon." But this mere mentioning of a weapon by the trial court does not negate the fact that the majority of the trial court's ruling seemed to be determining merely whether there was reasonable suspicion to believe that some crime had taken place. In fact, the part of the trial court's ruling that states that the officers "had cause to believe that crime was afoot here" is telling, because that it not the standard that must be met under the Fresh Pursuit Act. Instead, the trial court had to determine whether there was reasonable suspicion to believe that a "felony" was afoot here. This standard clearly was not properly applied by the trial court.

Judge Wilner's admonition is not limited to trial courts; it applies as well to appellate courts, and perhaps it is more important that it be heeded by such courts. The majority did not engage in the proper analysis nor apply the proper standard and, thus, " 'rubber stamp[ed]' conduct simply because the officer believed he had a right to engage in it." *Ransome v. State,* 373 Md. at 110–11, 816 A.2d at 908. In so doing, the majority, in effect, "abandon[s][its] responsibility to make the ultimate determination of whether the police have

acted in a lawful manner." [4]

I dissent.

HARRELL, J. and GREENE, J. have authorized me to state that they join in this dissent.

---

**4.** In *Ransome v. State*, 373 Md. 99, 816 A.2d 901 (2003), Judge Raker, author of the majority opinion in this case, wrote a concurring opinion in which she rejected the State's contention that sufficient grounds existed for police officers to conduct a·*Terry* stop. In *Ransome*, the defendant was either standing or walking on the sidewalk with an acquaintance in a high-crime neighborhood in Baltimore City when the police began to observe the defendant from an unmarked car. *Ransome*, 373 Md. at 101, 816 A.2d at 902. As the police brought their cruiser near the defendant, the defendant turned to look at the cruiser. *Id.* One of the police officers regarded this as suspicious and noted that the defendant had a bulge in his pants pocket, which the officer thought could have been a gun. Subsequently, the police approached the defendant and, eventually, conducted a *Terry* stop which revealed large quantities of drugs. *Ransome*, 373 Md. at 101–02, 816 A.2d at 902. In her concurring opinion, Judge Raker made a point that has particular relevance to the circumstances presented in this case: "[i]f Ransome's actions were sufficient to warrant a *Terry* stop, then anyone standing on a corner, talking with a friend in the late evening, in a high-crime area, with an unidentified 'bulge' in a pocket, may be stopped." *Ransome v. State*, 373 Md. 99, 114, 816 A.2d 901, 910 (2003) (Raker, J., concurring). The only fact that is different in this case is that Bost ran. The principle, however, is the same: the courts must not succumb to the temptation of allowing law enforcement officers to invoke the "buzz words" found in the statute to justify their actions. Unless the courts, both on the trial and appellate levels, take these standards seriously, there will be no protection against illegal stops and intrusions by over-zealous law enforcement officers.